Kathryn J. SHANKLES, et al., Plaintiff, Appellee,

v.

COSTA ARMATORI, S.P.A., et al., Defendants, Appellees.

Isolina Vazquez Gaston, Plaintiff, Appellant.

No. 83–1078.

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1983.
Decided Nov. 23, 1983.

Harry A. Ezratty, San Juan, P.R., for plaintiff, appellant.

Roberto Moreno, Old San Juan, P.R., with whom Jimenez & Fuste, San Juan, P.R., was on brief, for Costa Armatori, S.P.A., et al.

Before CAMPBELL, Chief Judge, ALDRICH and COWEN *, Senior Circuit Judges.

COWEN, Senior Circuit Judge.

Appellant, Isolina Vazquez-Gaston, appeals from an order of the United States District Court for the District of Puerto Rico (Jaime Pieras, Jr., District Judge) granting the motion for summary judgment of defendant-appellee, Costa Armatori, S.P.A. (Costa, defendant, appellee). She instituted this action against Costa for losses incurred and personal injuries sustained as a result of a fire aboard a ship chartered by Costa and on which she was a passenger. She sought recovery of $65,000, the estimated value of personal property lost in the fire, and $100,000 for physical pain, discomfort, and mental anguish allegedly caused by the fire. At issue in this appeal is whether the district court correctly held that appellant's action was time-barred due to her failure to comply with the notice and filing provisions of her ticket/contract of passage. Appellant urges several reasons why this court should overturn the district court's ruling. Because we do not find appellant's arguments convincing, we affirm the judgment of the district court.

## I. THE FACTS AND PRIOR PROCEEDINGS

The district court summarized the main facts of this case in its opinion as follows:

* Of the Federal Circuit, sitting by designation.

On March 30, 1979, the Italian cruise ship "ANGELINA LAURO" was engulfed by a fire while in port at Charlotte Amalie harbor in St. Thomas, U.S. Virgin Islands. The fire initially broke out in the ship's crew galley and spread throughout the vessel destroying or otherwise rendering useless the inside structure. With the exception of two minor injuries, no human casualties resulted from the fire, however, most of the personal property owned by passengers and crew were either lost, irreparably damaged by fire or were later subjected to vandalism and looting. Both plaintiffs [1] herein were passengers on the ANGELINA LAURO and for this ill-fated trip had purchased passage tickets from Costa Armatori S.P.A. [Costa] * * * Plaintiff brought a complaint against Costa and its underwriters on March 28, 1980, almost a year after the casualty. In this complaint she claimed loss of personal property found aboard and damages predicated on physical and mental duress suffered as a result of the fire.

Civil No. 80–0693, at 1, 2 (footnotes omitted).

Defendant's successful motion for summary judgment was based on Article 30 of the ticket/contract, which required that:

(1) For property losses, notice of the claim be filed with the company within 10 days of the loss and suit be commenced not later than 6 months therefrom.

(2) For personal injuries, notice of the claim be filed within 6 months and suit be commenced within 1 year.

Attached to Costa's motion for summary judgment was an affidavit which stated in substance that the appellant's claim for loss of personal property was not submitted until after Costa wrote her on April 6, 1979, but she dated it March 31, 1979; that her suit for the value of the personal property

was not filed within the 6-month time limitation provided in Article 30, and that she gave Costa no notice of her claim for personal injuries until the suit was filed, more than 6 months after the claimed injury. The affidavit was not controverted by appellant. To the contrary, her opposition to the motion for summary judgment stated that the facts stated in Costa's motion for summary judgment were substantially correct and could be accepted by the court.

On the basis of Costa's affidavit, a supporting memorandum, and the admissions by appellant, the district court found that appellant did not comply with either the notice of loss or the commencement of suit provisions of the ticket with regard to the claimed property losses, and that although the personal injury action was commenced 2 days before the end of the contractual 1-year period, no notice of that claim (required by the ticket to be given within 6 months) had been given to Costa. Thus, the district court ruled that Costa was entitled to summary judgment as a matter of law.

## II. ANALYSIS

### A. *The Reasonable Notice Issue*

In seeking reversal of the district court's judgment, appellant has advanced several arguments. With one exception, we find that they deserve only brief discussion. The exception is the appellant's contention that the ticket/contract did not meet the standard of "reasonable communicativeness" first espoused in *Lipton v. National Hellenic American Lines,* 294 F.Supp. 308 (E.D.N.Y.1968).

Beginning almost a century ago with the case of *The Majestic,* 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), courts have struggled to divine standards by which to determine whether steamship passengers are to be held bound by "boilerplate" conditions

---

1. Kathryn J. Shankles, originally a co-plaintiff in the district court case, entered into a stipulation of settlement which was approved by the court and her suit was dismissed.

located in the fine print of adhesion contracts of passage. Although some discernible standards have begun to emerge in the past two decades, this is still largely a case-by-case determination. Differing circumstances may render the same ticket binding on one passenger in one case, yet invalid as against another passenger in another case. The basic inquiry is whether, and to what extent, a passenger, who in almost all cases does not actually bargain for a particular term or condition of a contract of passage, but who nevertheless accepts or signs the ticket before embarkation, is bound by the fine print of the ticket.

Recent cases reflect that courts examine the entire ticket to answer the question: Does the contract reasonably communicate to the passenger the existence therein of important terms and conditions which affect legal rights? *DeNicola v. Cunard Line Ltd.,* 642 F.2d 5 (1st Cir.1981); *Silvestri v. Italia Societa Per Azione di Navigazione,* 388 F.2d 11 (2d Cir.1968); *McQuillan v. "Italia" Societa Per Azione di Navigazione,* 386 F.Supp. 462 (S.D.N.Y.), *aff'd* 516 F.2d 896 (2d Cir.1975), and *Lipton v. National Hellenic American Lines, supra.*

In *Silvestri,* Judge Friendly phrased the test in terms of whether the company has "done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." 388 F.2d at 17.

1. *Physical Characteristics of the Ticket/Contract*

The test which they have applied has led courts to the tedious and detailed examination of ticket coupons, booklets of conditions, and surrounding documentation on a case-by-case basis. Features such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question, are all called into question by reviewing courts in their assessment of a ticket's "reasonable communicativeness."

*See DeNicola, supra; Miller v. Lykes Brothers Steamship Co.,* 467 F.2d 464 (5th Cir. 1972); *Silvestri, supra; Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337 (S.D.N.Y.1981); *McQuillan, supra,* and *Lipton, supra.*

The Costa ticket purchased by appellant is contained in a 3½″ × 7½″ booklet, bound on the left edge, and identified on the cover as "Passage Ticket," in regular Roman type, under the Costa logo, both in Italian and in English. Inside the booklet are ten pages of terms and conditions set out in small but legible type in two columns—Italian on the left, English on the right. In bold print on the top of the first page (but not on the cover) appears the following legend: "Terms and Conditions of Contract of Passage." Immediately before the listing of the terms and conditions, in regular Roman print, is a statement that the terms and conditions thereafter are known to and agreed to be complied with by the passenger "owing to the mere fact of having booked and/or purchased the passage ticket." Thereafter, there are 35 terms and conditions, each identified by a boldfaced caption. Article 30, which limits and qualifies passengers' ability to bring tort actions, is on page 10 (of 10 pages) of the terms and conditions. At the bottom of that 10th page, the following legend appears in bold print (all grammatical and punctuation errors in original):

THE HOLDER OF THIS PASSAGE TICKET, DO HEREBY DECLARE TO THE EFFECTS AND UNDER PROVISIONS OF ARTS. 1341 and 1342 OF THE ITALIAN CIVIL CODE IN FORCE, THAT HE IS AWARE AND ADHERES TO ALL CONDITIONS AND CLAUSES SET FORTH IN THIS PASSAGE CONTRACT AND THAT HE SPECIFICALLY APPROVES CLAUSES Nos. 1, 2, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, and 35.

Next appears a foldout page consisting of a passenger declaration form to be filled out

and signed by the passenger. Near the end of the booklet, is the coupon portion of the ticket, which contains blanks for relevant information such as the passenger's name, schedule, berth, and fare. In the upper left hand corner, in regular Roman type, is the following legend:

By accepting or using this ticket the passenger agrees to the terms and conditions appearing on pages 2/10.

If the only consideration in determining whether the applicant had reasonable notice of Article 30 of the ticket/contract was the physical characteristics of the ticket, this would be a close case. The facts respecting the form of the ticket in this case seem to fall squarely between those where notice is virtually nonexistent (*Silvestri, supra,* and *Raskin, supra*) and those where the ticket clearly and conspicuously alerts the reader to the presence of important terms and conditions (*McQuillan, supra,* and *Lipton, supra*). Here, there is no facial warning on the cover of the booklet, nor is there any language such as "Notice" or "Warning" to explicitly call attention to the terms and conditions of the ticket/contract. The relevant contractual condition limiting the passenger's ability to maintain a tort action against the company is # 30 of 35 and is on the last of ten pages of terms and conditions. The ticket does, however, exhibit some efforts to alert passengers of the presence of terms and conditions: the bold-faced inscription at the foot of the terms and conditions, along with a reference set in regular type on the coupon itself to the preceding pages of terms and conditions. The district judge found that although the terms and conditions of the contract were set out in fine print, they were not unduly burdensome to read or understand. Also, he stated that these conditions preceded the actual ticket coupon and he concluded that the conditions "must be inevitably read or in the very least, the passenger is made aware of their presence or importance before getting to the ticket coupon itself."

## 2. Other Circumstances

Although we recognize the utility of comparing examinations by different courts of various tickets, we are also mindful of Judge Friendly's admonition in *Silvestri:*

To be sure, it can be said that all this is legalism, since Silvestri should have known the Italian Line had not gone to the trouble of printing the Terms and Conditions for the fun of it and would not have read them no matter what was said; and we confess some doubt how far the intensity of ticket reading by steamship passengers correlates with the strength of the invitation to indulge in it. * * * [388 F.2d at 18]

Aside from a realistic and somewhat humorous insight into the real world of consumer decision making, this dictum points up a very important factor that has been, at least implicitly, a second prong of the "reasonable communicativeness" standard. That is, that the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract may be of equal importance as the prominence of warnings and clarity of conditions in deciding whether a provision should be held to bind a particular passenger. Although a passenger may almost never read all of the fine print on the ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury. Thus, we think that the question of whether the passenger is bound by the ticket provisions should also take into account the circumstances of the passenger's possession of and familiarity with the ticket.

Consideration of circumstances beyond the ticket/contract itself has been apparent in some of the cases cited above. In *Lipton, supra,* noting the fact that the passenger had retained the ticket at all relevant times, the court stated:

In view of the function of the clause, the type-size in which it is printed is not the

significant matter; there is both ample time and a powerful incentive to study the passage contract ticket promptly after a loss has occurred * * *. [294 F.Supp. at 311]

In *DeNicola*, the court emphasized the fact that the passenger had retained possession of the ticket during her trip and for 4 years thereafter. In addition, the company advised the passenger's attorney of the company's intended reliance on the contractual limitation period in a letter sent just 2 weeks after the accident. 642 F.2d at 11.

It would appear then, that the proper test of reasonable notice is an analysis of the overall circumstances on a case-by-case basis, with an examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake.

It is the surrounding circumstances that lead us to the conclusion here that the district court correctly applied the contractual limitation provisions of Article 30. These circumstances are as follows:

(a). It is undisputed that appellant had possession of the passenger ticket before embarking on the cruise, and that she had the ticket after the fire.

(b). In addition to the ticket, Costa distributed to the passengers, prior to embarkation, a booklet in clearly legible print which, under the title "Baggage Insurance" contained the following statement: "We recommend insuring your baggage and personal effects, since the liability of the carrier is strictly limited by the terms of the passage contract."

(c). When she disembarked at the port of San Juan on March 31, 1979, the day following the fire, appellant was handed a form on which she was requested to list articles lost on the *Angelina Lauro*. As the district court found, the purpose of this form was to give passengers the opportunity to establish their claims and to eventually settle them. However, appellant did not

submit the form at that time, nor did she take any action to give notice of her claim until after April 6, 1979, when Costa wrote her reminding her that she had not submitted her list of lost articles. Enclosed in Costa's letter was another form which she was requested to complete and submit at her earliest convenience. She filled out that form, dated it March 31, 1979, and mailed it. The district court found that it was not submitted by appellant, although antedated by her, until after April 6, 1979, or later than the 10-day period specified in the ticket for submitting claims for loss of personal property.

(d). Promptly after she received Costa's letter of April 6, 1979, there existed a strong incentive for the appellant to review and study her ticket contract to determine what steps she should take on her claim for personal injuries, or to consult a lawyer for that purpose. However, it is established that Costa had no notice of her claim for personal injuries until her suit was filed on March 28, 1980. The 6-month period prescribed for giving notice of her claim for personal injuries expired September 30, 1979.

Before ending the discussion of this issue, we take cognizance of two recent decisions which reached a contrary result.[2] However, we think that both are factually distinguishable.

The first case is *Cada v. Costa Lines, Inc.*, 547 F.Supp. 85 (N.D.Ill.1982), which is relied upon by appellant. It is a class action which arose from the same fire and involved a ticket/contract identical to the one before us. The district court denied Costa's motion for summary judgment, holding that a factual issue existed as to the reasonable communicativeness of the warnings on the ticket. The major factual difference is that in *Cada*, the disputed clause in the ticket/contract limited to $150 the carrier's liability for loss of or damage to baggage. The district court there noted that where

---

**2.** As the district court noted, at least two other courts have dismissed claims arising from the *Angelina Lauro* fire. The suits were filed after the expiration of the contractual limitations period. *Aetna Casualty Co. v. Costa Armatori,* *S.P.A.* 1982 A.M.C. 2090 (Cir.Ct.N.Y.C.1980); *Morack v. Costa Armatori, S.P.A.,* No. 80–0652 (E.D.N.Y.1981), which apparently was not published.

contractual limitations are at issue, a passenger "may have considerably more time to apprise himself of the time limitation provision than to protect himself against a limitation of liability." The case illustrates the logic of a rule requiring consideration of surrounding circumstances in addition to the provisions of the ticket. After a disaster such as the fire on the *Angelina Lauro*, it would seem entirely natural that any passenger suffering a loss or damage would consult the ticket and its accompanying terms and conditions. Upon doing so, the plaintiffs in *Cada* would discover that they were out of luck because of the limitation of liability. However, if after appellant had returned home and received Costa's letter of April 6, 1979, she had promptly examined her ticket/contract or had consulted an attorney, she would have learned that she had ample time to file suit for the loss of her personal property and to give notice of her claimed personal injuries.

The second case is *Barbachym v. Costa Lines, Inc.*, 713 F.2d 216 (6th Cir.1983).[3] There the plaintiff was traveling as a part of a group tour and pursuant to a different version of the Costa Lines ticket than is in evidence in the instant case. Prior to boarding, the plaintiff was given a travel folder entitled "Group Boarding Pass." The following was written on the pass: "Conditions of Transportation as per Ticket No. —— Held by Group Leader." Folded and stapled to the travel folder was an 8½″ × 11″ document entitled "Terms and Conditions of Contract of Passage and Baggage." The plaintiff was never informed of the importance of the document and was never told to read it or to sign the ticket. In addition to the vague and confusing statements, the court concluded that even if the plaintiff had been able to deduce from the language on the pass that there might be additional terms and conditions governing the trip, he would naturally assume that only the group leader had access to any material containing such terms. Accordingly, the Sixth Circuit held that Article 30 of the terms and conditions, which required the passenger to file suit for personal inju-

ries within 1 year, did not provide reasonable notice and that plaintiff's untimely suit was not barred by Article 30.

█ The "reasonableness" of notice to passengers is a question of law to be determined by the court. *DeNicola, supra,* 642 F.2d at 11; *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir.1979). In the light of the undisputed facts before the district court, we conclude that the appellant had reasonable notice of the contractual conditions in issue in this case and that the district court properly granted summary judgment.

### B. *The Excusable Delay Issue*

█ In her appeal, appellant argues, as she did in the district court, that her failure to give Costa notice of her claim for personal injuries within the specified period of 6 months should be excused under the provisions of 46 U.S.C. § 183b. She asserts that since Costa was aware of her injuries and was not prejudiced by her failure to give notice within the 6-month period, she should be allowed to proceed with her claim. With respect to the ticket/contract provision requiring notice of injuries to be given within 6 months, section 183b provides in pertinent part as follows:

> (b) Claims not barred for failure to give notice
>
> Failure to give such notice, where lawfully prescribed in such contract, shall not bar any such claim—
>
> (1) If the owner or master of the vessel or his agent had knowledge of the injury, damage or loss and the court determines that the owner has not been prejudiced by the failure to give such notice; nor
>
> (2) If the court excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor
>
> (3) Unless objection to such failure is raised by the owner.

---

3. Our statement that the case is distinguishable on its facts is not to be taken as an implied

agreement with its correctness, a question we do not reach.

Clearly, appellant has failed to meet the requirements of this statute. As previously stated, she did not controvert the affidavit accompanying Costa's motion for summary judgment, which stated that Costa had never received notice of her claim for personal injuries. The fire was investigated by the United States Coast Guard and by the National Transportation Safety Board. Their reports stated that only two persons had sustained minor injuries; appellant was not one of them. Additionally, the district court found that appellant's failure to give notice within the prescribed period "effectively precluded defendant from investigating the claim or preparing for its defense." Appellant has not demonstrated that this finding was clearly erroneous and we hold that her failure to comply with the notice-of-claim provision of Article 30 cannot now be excused.

## C. The Class Action Issue

■ Appellant also contends that the existence of the class action in the District Court for the Northern District of Illinois (*Cada, supra* ), which involved the same ship fire, tolled the time limitation provision of the contract with respect to her claim for loss of property and required denial of the motion for summary judgment. Relying on *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) and *Escott v. Barchris Constr. Corp.,* 340 F.2d 731 (2d Cir.1965), she maintains that if she had intervened in the class action in Illinois, more than 6 months after her cause of action in the district court in Puerto Rico arose, her claim would not be barred by limitations. We reject this contention for several reasons. Although she was not served with notice of the class action, she was aware of that suit when she filed her opposition to the motion for summary judgment on June 15, 1982, and interposed the class action as a defense to the motion. However, she made no effort, to intervene in the *Cada* case at that time. Further, she did not advise the district court that she proposed to join in that action, and her brief in this appeal contains no statement of her intention to do so. In *American Pipe* and *Escott,* the parties asserting a suspen-

sion of the statute of limitations filed motions to intervene in the class actions involved in those cases.

Appellant has not shown that the class action has any bearing on her private suit here. As already indicated, the issue in *Cada* is the validity of a provision limiting to $150 Costa's liability for loss of and damage to baggage. Here her claim for loss of personal property is much broader. It includes the estimated value of 10 pieces of jewelry and about $500 in money which, according to appellant's deposition, were in the ship's safety deposit box and were there destroyed when the fire occurred. She concedes that the class action has no relevance to her suit for personal injuries.

For these reasons, we think that the rule of *American Pipe* and *Escott* should not be applied in this case, and that the pendency of the class action does not excuse her untimely filing of her suit for loss of personal property.

## D. Issues Not Raised Below

■ In her appeal, appellant makes the following additional contentions which were not raised in the district court:

1. She looks to Costa's letter of April 6, 1979, in which she was requested to submit her notice of property losses, and asserts that Costa was thereby estopped from raising the contractual time limitation as a defense to her action, and

2. She argues that general maritime law contains no statute of limitations and that her suit should be considered timely under the doctrine of laches.

Since these contentions were not presented to the district court, appellant is not entitled to have them considered for the first time on this appeal. We do not find that this is one of those "exceptional" or "horrendous" cases where the court will reverse the judgment of the district court on grounds that were not presented to that court. *Newark Morning Ledger Co. v. United States,* 539 F.2d 929 (3d Cir.1976); *Dobb v. Baker,* 505 F.2d 1041 (1st Cir.1974).

Finally, appellant urges reversal on the ground that whether she submitted her claim for the loss of personal property within the required 10-day period is a question of fact which should have been submitted to a jury for determination. Although the district court found that she did not comply with the notice requirement, the question of when the notice was submitted is immaterial. It is undisputed that her suit for the property loss was filed after the expiration of the 6-month period required by Article 30 of the contract.

*Affirmed.*