**Thomas DEIRO, Plaintiff-Appellant,**

v.

**AMERICAN AIRLINES, INC.,
Defendant-Appellee.**

No. 85–4259.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1987.

Decided May 8, 1987.

Nancy S. Tauman, Oregon City, Or., for plaintiff-appellant.

William B. Crow and James F. Dulcich, Portland, Or., for defendant-appellee.

Before GOODWIN and THOMPSON, Circuit Judges, and LYNCH,* District Judge.

EUGENE F. LYNCH, District Judge:

Plaintiff-appellant Deiro appeals from a district court order granting partial summary judgment for defendant-appellee American Airlines, Inc. ("American"). The district court held that American Airlines' liability for the death of seven greyhound racing dogs and injuries to two others, caused by heat exposure while the dogs were being transported in the cargo area of a jet on which plaintiff was a passenger, was limited to a total of $750 pursuant to a liability limitation provision in Deiro's passenger ticket. For the reasons expressed below, we affirm.

## I. FACTUAL BACKGROUND

Thomas Deiro filed this action against American for breach of contract, negligence, and willful and wanton behavior alleging damages of approximately $900,-000 for the death of seven greyhound rac-

---

* Honorable Eugene F. Lynch, United States District Judge, Northern District of California, sitting by designation.

ing dogs and injuries to two others. The deaths and injuries occurred on August 31, 1983, while Deiro and his dogs were being transported on a flight between Portland, Oregon and Boston, with a stop and change of aircraft in Dallas/Fort Worth. Deiro's complaint alleged that during the layover in Dallas/Fort Worth, the dogs were placed in their shipping cages on a baggage cart exposed unshaded to the sun in approximately 97–99 degree temperatures, without proper ventilation or water. The complaint also alleged that, despite Deiro's warnings at that time to American personnel, the dogs were never attended to by the airline and that he was refused permission to care for the dogs himself. When Deiro's flight arrived in Boston, seven of the dogs were dead and two were in serious condition. An autopsy determined that the first seven dogs died from heat exposure.

Deiro contends on appeal that the district court erred in granting partial judgment because of its holding that American's liability for the injuries to the dogs is limited to $750 as expressly set forth in his passenger ticket.[1] Our review of this holding requires analysis of three issues: 1) whether the contract of carriage between Deiro and American included the $750 baggage liability provision, contractually binding Deiro to this limitation; 2) whether American, as required under the released valuation doctrine, gave Deiro reasonable notice and a full and fair opportunity to declare a higher value for his baggage and obtain protection in an amount greater than $750; and 3) whether a common carrier can limit contractually its own liability for gross negligence.

Our analysis of the first two issues requires a detailed review of the factual circumstances surrounding Deiro's purchase of his ticket, including the location and content of the notice of the baggage liability limitation in the ticket booklet. Consequently, before surveying the applicable case law, we must set forth the physical characteristics of the ticket booklet and the exact content of the notice of the limitation.

Deiro purchased his ticket from a travel agent nine days before the departure of the flight from Portland. It is undisputed that at this time Deiro received a several-page ticket coupon comprised of the following:[2] 1) printed on the face of the ticket, along with a list of Deiro's flights, was the following line in the upper left-hand corner printed in very small type: "PASSENGER TICKET AND BAGGAGE CHECK [—] SUBJECT TO CONDITIONS CONTAINED IN THIS TICKET"; 2) attached to the ticket was a page with the heading "CONDITIONS OF CONTRACT," under which paragraph three stated that the "services performed by each carrier are subject to: (i) provisions contained in this ticket, (ii) applicable tariffs, (iii) carrier's condition of carriage and related regulations which are made part hereof (and are available on application at the offices of carrier) ..."; and 3) printed on another page in significantly larger type were two notices; the first with a heading "ADVICE TO INTERNATIONAL PASSENGERS ON LIMITATION OF LIABILITY," and the second with the heading "NOTICE OF BAGGAGE LIABILITY LIMITATIONS." The second heading was for a paragraph that stated:

> Liability for loss, delay, or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: ... (2) For travel wholly between U.S. points, to $750 per passenger on most carriers (a few have lower limits). Excess valuation may not be declared on certain types of valuable articles. Carriers assume no liability for fragile or perishable articles.

1. The district court ruled on two other issues that are not addressed in this opinion. First, the court denied Deiro's cross-motion for partial summary judgment, rejecting his argument that animals are not "baggage" and therefore not subject to American's baggage liability limitation. That ruling was not appealed. Second, the court held as a matter of law that, under Oregon law, Deiro was not entitled to punitive damages. Although this second ruling was appealed, we do not reach it because our decision upholding the $750 liability limitation makes the punitive damages issue moot.

2. The ticket coupon, which measures only seven and one-half inches by three inches, is apparently the standard one used throughout the airline industry.

Further information may be obtained from the carrier.

The district court was presented with conflicting evidence on whether Deiro read the above notices. First, in his affidavit Deiro stated that "[t]o my knowledge, all of the tickets and coupons I received from Walker Travel related to me and my luggage, but not to the shipment of my dogs.... I did receive 'ADVICE TO INTERNATIONAL PASSENGERS ON LIMITATION OF LIABILITY'.... I was not an international traveler, and concluded the information on this coupon did not apply to me." At his deposition, however, Deiro stated: "You know, there's a whole bunch of stuff printed on the back of the ticket and I don't read all of that. All I know is the ticket is going to take me from A to B, where I want to go and back."

The booklet containing American's "Conditions of Carriage," referred to above in the ticket coupon as "available at the offices of the carrier," is available at all American ticket counters. The third page of the conditions of carriage explains that passengers can claim excess valuation for their baggage at an additional charge of $.50 per $100, up to $25,000 of protection.

Finally, a notice entitled "NOTICE OF BAGGAGE LIABILITY LIMITATIONS" was posted at American's Portland International Airport ticket counter at all times material to this dispute. The wording of this sign is nearly identical to that in the paragraph in the ticket coupon under the same heading, which was discussed above.

Deiro never declared a higher value for his dogs. Two days prior to his scheduled flight, he went to the Portland International Airport to arrange for the shipment of the nine dogs on his flight and for eight dogs on the following day (the latter group of dogs is not at issue in this action). At that time, Deiro paid an excess baggage charge of $408 because the number of individual pieces of baggage he was shipping was above the minimum allowed without an extra charge. He did not ask about declaring a higher value for the dogs of over a total of $750 and was not informed of this option by any airline personnel.

The face of the baggage ticket plaintiff received at that time stated in small print: "BAGGAGE CHECKED SUBJECT TO TARIFFS, INCLUDING LIMITATIONS OF LIABILITY THEREIN CONTAINED."

## II. DISCUSSION

### A. *Standard of Review*

A district court's granting of a motion for summary judgment is reviewed by this Court de novo. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Culver v. Boat Transit, Inc.,* 782 F.2d 1467, 1469 (9th Cir.1986).

### B. *When is the Passenger of a Common Carrier Contractually Bound to the Fine-Print Liability Limitations in the Passenger Ticket?*

The district court did not expressly address the issue of whether Deiro is contractually bound to the limitation of liability. The precise wording of the issue was aptly stated by the First Circuit in a recent case involving a steamship passenger, but which is equally applicable to passengers of air carriers. The First Circuit stated:

Beginning almost a century ago with the case of *The Majestic,* 166 U.S. 375 [17 S.Ct. 597, 41 L.Ed. 1039] (1897), courts have struggled to divine standards by which to determine whether steamship passengers are to be held bound by "boilerplate" conditions located in the fine print of adhesion contracts of passage. Although some discernible standards have begun to emerge in the past two decades, this is still largely a case-by-case determination. Differing circumstances may render the same ticket binding on one passenger in one case, yet invalid as against another passenger in another case. The basic inquiry is whether, and to what extent, a passenger, who in almost all cases does not actually bargain for a particular term or condition of a contract of passage, but who nevertheless accepts or signs the

ticket before embarkation, is bound by the fine print of the ticket.

Recent cases reflect that courts examine the entire ticket to answer the question: Does the contract reasonably communicate to the passenger the existence therein of important terms and conditions which affect legal rights? [citations omitted].

*Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 863–64 (1st Cir.1983).

The Second, Fifth, and Sixth Circuits have also adopted this "reasonable communicativeness" test to determine when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket. *See, e.g., Barbachym v. Costa Line, Inc.,* 713 F.2d 216, 219 (6th Cir.1983) (referring to test as "reasonable notice" standard); *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11, 12–13 (5th Cir.1979); *Silvestri v. Italia Societa Per Azione di Navigazione,* 388 F.2d 11, 14–17 (2d Cir.1968) (the Second Circuit was the first circuit to adopt the rule, in an opinion written by Judge Friendly). The "reasonableness" of notice under this test is a question of law to be determined by the court. *Shankles,* 722 F.2d at 867.

To determine "reasonable communicativeness," the First Circuit in *Shankles* employed a two-pronged analysis. First, it recognized that, under what it entitled the "Physical Characteristics of the Ticket/Contract," "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question, are all called into question by reviewing courts in their assessment of a ticket's 'reasonable communicativeness.'" 722 F.2d at 864.

Second, the court stated that "the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract may be of equal importance as the prominence of warnings and clarity of conditions in deciding whether a provision should be held to bind a particular passenger." *Id.* at 865. The surrounding circumstances to be considered include the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket. *Id.* at 866.[3]

Therefore, the *Shankles* court concluded that the "proper test of reasonable notice is an analysis of the overall circumstances on a case-by-case basis, with an examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." 722 F.2d at 866.

As in *Shankles,* if the only consideration in the instant case were the physical characteristics of the ticket, this would be a close case. The instant case falls between those cases in which notice on the face of the ticket is virtually nonexistent, *see Shankles,* 722 F.2d at 865, and those in which the notice is clear and conspicuous. *See id.*

Even relative to the small size of the face of the ticket, the type size of the message "SUBJECT TO CONDITIONS CONTAINED IN THIS TICKET" is tiny and not apparently highlighted by a different colored background. It is doubtful that this line alone could constitute an effort by the airline to provide a "clear" and "conspicuous" notice to its passengers that important conditions of carriage are listed inside the ticket coupon.

On the other hand, the warning is at the top of the ticket in the far-left corner. The

---

**3.** Some circuits employ a different version of the reasonable communicativeness test that does not recognize a second prong that surveys extrinsic factors. *See, e.g., Barbachym,* 713 F.2d at 219–20. That version focuses on the physical characteristics of the passenger ticket and phrases the test as one requiring the carrier to show that it did "all that it reasonably could to warn the passengers of its limited liability." *Id.* Interestingly, both this version and the First

Circuit's formulation of the test in *Shankles,* which we adopt here, purport to originate from Judge Friendly's leading opinion in *Silvestri. Barbachym,* 713 F.2d at 219; *Shankles,* 722 F.2d at 864. We agree with the First Circuit's interpretation of the case law that the proper test of reasonable notice must be a case-by-case analysis that examines the ticket itself and the circumstances surrounding the particular carrier-passenger relationship at issue.

message sought to be conveyed by the notice is clear. Importantly, the notices contained inside the ticket coupon are conspicuous and understandable, especially the notice in relatively large type under the sizeable heading "NOTICE OF BAGGAGE LIABILITY LIMITATIONS."

What is a close case under the first part of our analysis, however, becomes decidedly clear upon consideration of the "extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." In the instant case, it is undisputed that Deiro is an experienced commercial air traveler who flies commercial airlines six to ten times a year. It is also undisputed that, at the very least, Deiro knows that there is "a whole bunch of stuff printed on the back of the ticket." That he does not "read all of that" only points to his knowledge of the existence of some kind of written provisions or notices in the ticket.

It is also undisputed that the ticket was delivered to Deiro nine days before his flight. Therefore, he had ample opportunity to become familiar with the baggage liability limitations, especially when he knew in advance that he would be shipping valuable baggage.

▪ In summary, we find it difficult to imagine how any passenger with Deiro's experience, planning to check a quarter of a million dollars worth of baggage, could have had more opportunity or incentive to familiarize himself with the baggage liability provisions. We conclude that under the two-pronged reasonable communicativeness test, Deiro is contractually bound by the limitation of liability. We next consider whether American gave Deiro reasonable notice and a full and fair opportunity under the released valuation doctrine to declare a higher value for his baggage and obtain protection in an amount greater than $750.

## C. *Released Valuation Doctrine*

▪ As a general rule, under the federal common law governing common carriers, carriers may partially limit their liability for injury, loss, or destruction of baggage on a "released valuation" basis. *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir.1977). Under this doctrine, in exchange for a low carriage rate, the passenger-shipper is deemed to have released the carrier from liability beyond a stated amount. The carrier can lawfully limit recovery to an amount less than the actual loss sustained only if it grants its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge. *New York, N.H. & H.R.R. v. Nothnagle*, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953). Therefore, the shipper is bound only if he has reasonable notice of the rate structure and is given a fair opportunity to pay the higher rate in order to obtain greater protection. *Klicker*, 563 F.2d at 1315; *see also First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1117 (3d Cir.1984); *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145, 1148 (N.D. Ill.1985); *Fireman's Fund Insurance Co. v. Barnes Electric, Inc.*, 540 F.Supp. 640, 645 (N.D.Ind.1982).

The federal common law applicable to carriers was not changed with the advent of regulation of air carriers. *First Pennsylvania Bank*, 731 F.2d at 1117; *Klicker*, 563 F.2d at 1314. Additionally, despite plaintiff's arguments to the contrary, the subsequent deregulation of air carriers in 1978 did not change the applicability or substantive content of the relevant federal common law. *First Pennsylvania Bank*, 731 F.2d at 1122; *Neal*, 605 F.Supp. at 1148 n. 2.

▪ In the instant case, we find that the airline provided Deiro with a full and fair opportunity to declare a higher value for his dogs and receive protection against destruction in an amount greater than $750, and that Deiro received reasonable notice of this opportunity.[4]

---

**4.** Obviously, the analysis under the released valuation doctrine can overlap with that of the reasonable communicativeness test. Nevertheless, the two are distinct legal questions. Of course, what is ajudicated reasonable notice under one is likely to constitute reasonable notice under the other. It is quite possible, however, that the physical characteristics of the ticket

Despite plaintiff's assertion to the contrary, federal common law has never required actual notice of a carrier's liability limitation. *See, e.g., New York C. & H.R.R. Co. v. Beaham,* 242 U.S. 148, 151–52, 37 S.Ct. 43, 44, 61 L.Ed. 210 (1916) ("[A]cceptance and use of the ticket sufficed to establish an agreement *prima facie* valid which limited the carrier's liability. Mere failure by the passenger to read the matter plainly placed before her could not overcome the presumption of assent.") Similarly, the passenger's signature is also not required. *American Railway Express Co. v. Lindenburg,* 260 U.S. 584, 590–91, 43 S.Ct. 206, 208–09, 67 L.Ed. 414 (1923). Finally, Deiro's contention that the notice in the ticket coupon was inadequate because it did not list in detail the actual rates for greater protection is unsupported. We have found no case holding that making the detail of the rate structure available at the carrier's office deprives a passenger of a fair opportunity to declare a higher value.

D. *Validity of a Common Carrier's Contractual Limitation on its own Liability for Gross Negligence*

 Deiro contends that even if the liability limitation has legal effect, it cannot shield defendant from its own gross negligence. The case law is clearly to the contrary, however. Under the federal common law, only an appropriation of property by the carrier for its own use will vitiate limits on liability. *See, e.g., Glickfeld v. Howard Van Lines, Inc.,* 213 F.2d 723, 727 (9th Cir.1954); *Neal,* 605 F.Supp. at 1149 n. 3. Consequently, if a liability limitation is valid, a passenger's recovery for damage cannot exceed the released value regardless of the degree of the carrier's negligence. *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29–30, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1936); *Quasar Co. v. The Atchison, Topeka and Santa Fe Ry. Co.,* 632 F.Supp. 1106, 1113 (N.D.Ill. 1986).

might dictate that no contractual limitation exists even though there might have been a full

## III. CONCLUSION

For the foregoing reasons, we conclude that Deiro is contractually bound to the legally valid $750 baggage liability limitation contained in his ticket coupon. Accordingly, the judgment of the district court is

**AFFIRMED.**