Gregory J. **CORNA** and Joanna Wormsbecher **Corna**,
Plaintiffs,

v.

**AMERICAN HAWAII CRUISES, INC.,** American Hawaii Cruises Joint Venture and American Global Line, Inc., John Does 1–20; Mary Does 1–20; Doe Corporations 1–20; Doe Partnerships 1–20; Doe Associates 1–20; Doe Governmental Agencies 1–20; and Other Entities 1–20, In Personam and the S.S. **CONSTITUTION** O.N. D262027 In Rem, Defendants.

No. Civ. 91–00632 DAE.

United States District Court,
D. Hawaii.

April 20, 1992.

Jay L. Friedheim, Steven T. Barta, Pauahi Tower, Honolulu, Hawaii, for plaintiffs.

Robert G. Frame, Leonard F. Alcantara, Mary A. Cox, Alcantara & Frame, Honolulu, Hawaii, for defendants.

ORDER DENYING MOTION TO DISMISS OR TRANSFER ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID ALAN EZRA, District Judge.

Defendants American Hawaii Cruises, Inc., American Hawaii Cruises, A Joint Venture, American Global Lines, Inc. and the S.S. Constitution (hereinafter collectively referred to as "defendants") motion to dismiss or transfer action to the United States District Court for the Northern District of California came on for hearing before this court on April 6, 1992. Defendants were represented by Leonard F. Alcantara, Esq. and Mary Cox, Esq.; plaintiffs Gregory J. Corna and Joanna Wormsbecher Corna ("plaintiffs") were represented by Jay Lawrence Friedheim, Esq. The court having considered the arguments of counsel, the moving papers and records and files herein, hereby DENIES the motion.

## BACKGROUND

Plaintiffs are Connecticut residents. Defendants American Hawaii Cruises, Inc. ("AHCI") and American Global Lines, Inc. ("AGL") are Delaware corporations which maintain their principal place of business at San Francisco, California, and are the only joint ventures in defendant American Hawaii Cruises, A Joint Venture ("AHC"), a Hawaiian joint venture. *See* Affidavit of Arthur P. Herman (hereinafter "Herman Affidavit"). AHC manages the *in rem* defendant S.S. Constitution which operates between ports in the Hawaiian Islands. AHC's management center is located at the corporate headquarters of AGL and AHCI, 550 Kearny Street, San Francisco, California. *Id.*

Travel arrangements were made for plaintiffs on October 15 and 16, 1991 to travel aboard the S.S. Constitution on a voyage commencing October 26, 1991. AHC maintains a waiting list containing the names of individuals who would like to book passage on a particular cruise at a discounted rate for confirmation close to sailing. *See* Declaration of William Gately. These arrangements were made by plaintiffs' travel agent, Dee Framison of Cruiseworld. *See* Declaration of Dee Framison (hereinafter "Framison Declaration"). On October 15, 1991, Ms. Framison sent a cruise confirmation final payment letter to plaintiffs which notified plaintiffs of the cancellation charges and strongly recommended that plaintiffs purchase cancellation insurance. *Id.* and Exhibit A thereto. Ms. Framison received plaintiffs' cruise package, including AHC's ticket contracts, from AHC on October 18, 1991, and immediately forwarded it to plaintiffs by first class mail. *Id.*

The AHC contract contains the terms and conditions which govern plaintiffs' cruise. Section 14(c) of the contract contains a forum-selection clause, which provides:

(c) Only Place to Sue. Any lawsuit arising out of or in any manner relating to

this Contract, including but not limited to lawsuits for loss of or damage to personal property, personal injury or death, must be brought and litigated, if at all, before a court located in the State of California, City and County of San Francisco, including the United States District Court, Northern District of California, to the exclusion of the courts of any other country or located in any other city, county or state of the United States. *See* Herman Affidavit and Exhibit A thereto.

On October 26, 1991, plaintiffs boarded the S.S. Constitution in Hawaii and began their cruise. On October 31, 1991, while on board the ship, plaintiffs allege they were assaulted by crew members in an unprovoked attack and sustained personal injury as a result.[1] Plaintiffs also allege that they were wrongfully put off the ship the following day on the island of Kauai by the captain.

Plaintiffs filed their complaint on November 8, 1991, alleging the following causes of action: negligence, assault, battery, infliction of emotional distress, breach of contract and punitive damages. On December 26, 1991, defendants filed their answer to the complaint, as well as the instant motion to dismiss or transfer action based upon the forum-selection clause in plaintiffs' cruise ticket contract.

## DISCUSSION

I. Law Governing The Construction Of The AHC Contract

■ The AHC contract is a maritime contract. The interpretation and enforcement of a maritime contract is governed by federal maritime law. *Carnival Cruise Lines, Inc. v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991); *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 18 L.Ed. 397 (1867).

Plaintiffs, however, argue that they have invoked the joint jurisdiction of this court

under admiralty and diversity of citizenship. They state that some of the alleged torts occurred on land in the State of Hawaii and not on the cruise ship. Specifically, plaintiffs' claim that they received notice that they would not be allowed back on the ship while they were on the island on Kauai, and that defendants have wrongfully interfered with the Coast Guard's investigation of the incidents which occurred on board the ship on October 31, 1991. The alleged acts of interference with the Coast Guard's investigation also occurred in Hawaii. *See* Affidavit of Joanna Corna (hereinafter "Corna Affidavit").

■ The Third Circuit, however, has expressly rejected the argument made by plaintiffs that the mere pleading of diversity jurisdiction requires application of law other than federal maritime law to claims arising out of the court's maritime jurisdiction. *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione*, 858 F.2d 905 (3rd Cir. 1988), *cert. dism'd*, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989). In *Hodes*, the Court stated:

A passenger ticket for an ocean voyage is a maritime contract. *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1886). Accordingly, whether ticket conditions form part of the passenger's contract and the effect such conditions should be afforded are matters governed by the general maritime, not the local state, law. Despite the appellees having originally filed this action under diversity jurisdiction, 28 U.S.C. § 1332(a), we are not constrained by *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply New Jersey law. Rather, "when a common law action is brought, whether in a state or in a federal court, to enforce a cause of action cognizable in admiralty, the substantive law to be applied is the same as would be applied by an admiralty court-that is, the general maritime law."

---

1. Plaintiffs' and defendants' versions of what occurred aboard the cruise ship in the early morning hours of October 31, 1991 differs markedly. Defendants claim that plaintiffs were drunk and abusive, and that plaintiff Greg-

ory Corna assaulted certain crew members. Defendants claim that Mr. Corna's alleged injuries occurred while crew members were trying to subdue him.

*Jansson v. Swedish Am. Line,* 185 F.2d 212, 216 (1st Cir.1950) (Magruder, C.J.); *Siegelman v. Cunard White Star,* 221 F.2d 189, 192–93 (2d Cir.1955) (Harlan, J.).

*Id.* at 909. The fact that plaintiffs have pled diversity jurisdiction, therefore cannot defeat the admiralty jurisdiction of this court for claims which are part of the contract of carriage.[2] The court will accordingly apply federal maritime law to the instant motion.

## II. Whether The Forum–Selection Clause Should Be Enforced

■ Federal maritime law applies a two-prong test to determine the enforceability of a forum-selection clause. First, the terms of the contract must be "reasonably communicated" to the passenger. *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1364 (9th Cir.1987). Second, the forum-selection clause must be "fundamentally fair." *Carnival Cruise Lines, Inc. v. Shute,* —— U.S. ——, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991). Plaintiffs argue in the present case that the terms of the contract were not reasonably communicated to them and that the forum-selection clause is unreasonable.

### A. *Whether The Clause Was Reasonably Communicated*

The Ninth Circuit first adopted the "reasonable communicativeness" test in *Deiro v. American Airlines, Inc.,* 816 F.2d 1360 (9th Cir.1987) (adopting the test used by the First Circuit in *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 863 (1st Cir. 1983)). Under this test, the court must conduct a two-pronged analysis to determine whether the contract reasonably communicated to the passenger the existence of important terms and conditions which affect legal rights. The "reasonableness" of notice under this test is a question of law to be determined by the court. *Id.* at 1364.

First, the court must examine the physical characteristics of the contract, "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Id.* (citing *Shankles,* 722 F.2d at 865). Second, the court must consider the circumstances surrounding the passenger's purchase and subsequent retention of the contract, including "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice the passenger received outside of the ticket." *Id.* (citing *Shankles,* 722 F.2d at 866).

■ Therefore, "the proper test of reasonable notice is an analysis of the overall circumstances on a case-by-case basis, with an examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Id.* at 1364 (citing *Shankles,* 722 F.2d at 866).[3]

Turning to the facts of the present case, the front page of the AHC contract issued to plaintiffs contains the words: "DON'T MISS A THING". These words are just

---

**2.** Further, to the extent plaintiffs assert claims for torts which occurred on land in Hawaii, this would invoke the Supplemental Jurisdiction of this court pursuant to 28 U.S.C. § 1367(a), which provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplementary jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**3.** Defendants state that this court has already found the "substantially" same form of ticket contract was reasonably communicated to the passengers in *Kendall v. American Hawaii Cruises,* 704 F.Supp. 1010 (D.Haw.1989). In *Kendall,* the court had to decide whether it would enforce the limitations period for bringing suit in the AHC contract at issue in that case. The court does not find *Kendall* dispositive because the court in that case was addressing a different provision of the contract, and the extrinsic factors were not the same as those in the present case.

below the center in much larger letters than that set forth in the rest of the contract. Directly below this, appearing between two parallel, horizontal lines across the ticket cover, is the following:

---

IMPORTANT NOTICE TO CRUISE GUESTS: THIS IS A CONTRACT BINDING ON YOU AND EACH OTHER GUEST WHOSE NAME APPEARS ON THIS TICKET CONTRACT! EACH GUEST NAMED ON THIS CONTRACT SHOULD CAREFULLY READ THE CONTRACT TERMS ON THE FOLLOWING PAGES 2 TO 4, PARTICULARLY SECTIONS 2, 3, AND 9 THROUGH 15, WHICH GOVERN AND LIMIT EACH GUEST'S RIGHTS.

---

Directly below this, appears the heading: "CONTRACT TABLE OF CONTENTS." Below this heading appears a table of contents containing the titles of sixteen sections of terms and conditions, including section 14: "TIME LIMITATION; NOTICE OF CLAIMS AND TIME TO FILE AND SERVE SUITS; ONLY PLACE TO SUE." All of the above is in blue/green and/or red capital letters, with the colors used interchangeably to highlight the importance of the various information.

The beginning of the second page of the contract is legended: "TERMS OF CRUISE TICKET CONTRACT," and specifically directs the plaintiffs' attention to the following:

Please notice limitation of carrier's liability for baggage, personal injury and death (sections 11 to 13); your time limitations to give notice of claims, file and serve suit (section 14); carrier's indemnity and lien rights (section 15).

This page and the following two pages contain sixteen paragraphs of terms and conditions. Each paragraph contains a heading in larger type capital letters, including paragraph 14 entitled: "TIME LIMITATION: NOTICE OF CLAIMS AND SUITS; ONLY PLACE TO SUE."

These three pages are all in the blue/green letters.

The court finds that the notice to plaintiffs with regard to the forum-selection clause is clear and conspicuous. The contract contains the warning notice to the passenger in bold letters on the front cover of the contract. The passenger is advised to read the terms contained therein and to pay special attention to particular terms, including paragraph 14. Again, on the second page where the terms and conditions are actually listed, the passenger is again warned that he should pay special attention to certain paragraphs which limit the carrier's liability or otherwise limit the passenger's rights. Under these circumstances, the court finds that the physical characteristics of the contract weigh in favor of a finding for defendants.

However, the court must also consider the extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake. *Deiro*, 816 F.2d at 1365. In the instant case, plaintiffs claim that they only received the cruise ticket the day before they left Connecticut for the cruise[4] and that they did not have time to read the ticket. Further, plaintiff Joanna Corna states that she never saw the ticket which was in her husband's possession, but that she would not have understood it even if she had seen it because she is from the Netherlands and Dutch is her native language. *See* Affidavit of Joanna Corna.

The fact that Mrs. Corna did not see the cruise tickets or that Mr. Corna did not read the terms and conditions of the tickets does not convince the court that it should find that the terms therein are not binding on plaintiffs. First, the cruise ticket contract is binding on Mrs. Corna even if she did not see it because she authorized her husband to take possession of the ticket on her behalf. *Hodes*, 858 F.2d at 912 (passenger charged with notice of the ticket provisions by virtue of travel agent's possession of tickets); *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3rd Cir.), *cert.*

---

**4.** According to plaintiff's declaration, this was two to three days before the cruise was to leave from Honolulu. *See* Declaration of Joanna Corna.

*denied,* 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987) (friend's possession of ticket sufficient to charge plaintiff with notice of its provisions).

Further, the fact that plaintiffs chose not to read the terms and conditions of the contract does not weigh in favor of plaintiffs. A party cannot avoid the effect of contractural provisions to which he is a party by simply choosing not to read the contract. *Marek,* 817 F.2d at 247; *Kendall,* 704 F.Supp. at 1017; *Murray v. Cunard S.S. Co., Ltd.,* 235 N.Y. 162, 139 N.E. 226, 228 (1923) ("[t]he passenger who omits to read takes the risk of the omission."). *See also Deiro,* 816 F.2d at 1365 (passenger who knows that there is a "whole bunch of stuff" printed on the back of the ticket and chooses not to "read all of that" points to his knowledge of conditions of the ticket). *Cf. Muratore v. The Scotia Prince,* 845 F.2d 347, 352 (1st Cir.1988) (individual passenger not charged with notice of conditions contained in single group ticket issued to tour leader).

Therefore, the court concludes that a reasonable plaintiff would have reviewed the terms of the contract and apprised himself of its terms. Under the circumstances of this case, where the ticket itself clearly conveyed the limitations in the contract, the court cannot find that the forum-selection clause was not reasonably communicated to plaintiffs.

### B. *Whether The Forum–Selection Clause Is Reasonable*

In *Carnival Cruise Lines, Inc. v. Shute,* — U.S. ——, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991), the Supreme Court held that forum-selection clauses contained in form passage contracts are enforceable provided that they pass judicial scrutiny for fundamental fairness.

In *Shute,* the plaintiff purchased passage for a Mexican cruise aboard defendant's passenger vessel. While the ship was in international waters, the plaintiff sustained personal injuries and filed suit in her home state of Washington. Defendant's passage contract contained a forum-selection clause requiring all litigation to be held in Florida. The Ninth Circuit, relying on *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), held that a nonnegotiated forum clause in a passenger contract is never enforceable because it is not the subject of bargaining.[5]

The Supreme Court stated that while it was reasonable for *The Bremen* court to have expected the parties to have negotiated with care in selecting a forum for the resolution of disputes arising from their complicated international agreement, it would be entirely unreasonable to assume that a cruise passenger would or could negotiate the terms of a forum clause in a routine commercial cruise ticket form. Nevertheless, the Court found that it could not adopt the Court of Appeals determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining. The Court stated:

> Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora.... Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources that otherwise would be devoted to deciding those motions.... Finally, it stands to reason that passen-

---

**5.** *The Bremen* involved a complex international business transaction between two corporations for the towage of an extremely costly piece of equipment where the Court found that the forum-selection clause was a vital part of the agreement. The Court held that a freely negotiated private international agreement, such as the one there at issue, should be given full force and effect. 92 S.Ct. at 1914–15.

gers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued....

*Id.*, 111 S.Ct. at 1527 (citations omitted). The Court then reviewed the facts of the case before it and concluded that the Ninth Circuit erred in refusing to enforce the forum-selection clause:

It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness. In this case, there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims. Any suggestion of such a bad-faith motive is belied by two facts: petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports. Similarly, there is no evidence that petitioner obtained respondents' accession to the forum by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity. In the case before us, therefore, we conclude that the Court of Appeals erred in refusing to enforce the forum-selection clause.

*Id.* at 1528.

Plaintiffs argue that the forum-selection clause in this case is unreasonable because (1) AHC bookings made in Hawaii equals 8.23% of its total business, which is the highest percentage of bookings in any state, (2) all of the AHC cruises originate in Hawaii and therefore, most witnesses to any causes of action will be in Hawaii, and (3) they could not have canceled their tickets within the time frame in which they received them without forfeiting the entire cruise amount.[6]

The court notes that there are several factors which support a finding that the forum-selection clause in the ticket contract is fundamentally fair. First, AHCI and AGL maintain their corporate headquarters and principal place of business in San Francisco, and the center of management for their joint venture AHC is in San Francisco. The corporate management, bookkeeping, ticketing and marketing departments of all these related entities are also located in San Francisco. *See* Herman Affidavit. Plaintiffs' payment was directed to San Francisco and plaintiffs' tickets were generated and mailed from San Francisco. *See* Declaration of Sam D. Delich (hereinafter "Delich Declaration") and Exhibit A thereto.

Further, though AHC's cruises depart from and to Hawaii and not San Francisco, only 1% of AHC's passengers during the past four years were residents of Hawaii. Approximately 99% of AHC's passengers are residents of states within the continental United States (in excess of 98%) or foreign countries (less than 1%). *Id.*[7]

■ In the instant case, however, plaintiffs received the tickets 2 to 3 days before the cruise departure date because they were taking the cruise on a standby rate. Under the terms of the contract, plaintiffs would have forfeited the entire ticket price if they canceled their trip at that time.[8] *See* section 3 of Exhibit A. Therefore, plaintiffs did not have an option to reject the cruise contract without forfeiting several thousands of dollars. *Cf. Shute,* 111

---

6. Paragraph 3 of the contract sets forth the cancellation fees. *See* Herman Affidavit and Exhibit A thereto. Defendants state that the cancellation fees are also set forth on the back covers of AHC's brochures. *Id.*

7. In their reply memorandum, defendants state that within the past *two* years, only about 1.8% of AHC's passengers were residents of Hawaii. *See* Delich Declaration and Exhibit C thereto.

8. If the passenger has not purchased cancellation insurance, the ticket contract provides that a passenger must provide written notice of cancellation within four business days of the commencement date or forfeit 100% of their purchase price. If the passenger has purchased the cancellation waiver insurance, he must still provide telephone or written notice of cancellation within four business days or forfeit the entire purchase price. *See* Herman Affidavit and Exhibit A thereto, ¶ 3.

S.Ct. at 1528 (court noted that passengers had the option of rejecting the contract with impunity).

Defendants counter that although the situation has never arisen, AHC "would in all probability" refund the entire purchase price, less the $25.00 administrative charge and any airline penalties for cancellation, provided the passenger rejects the contract within a reasonable period prior to the departure date. *See* Gately Declaration. However, the ticket itself states that cancellation within 4 days of the departure date, "will result" in a 100% forfeiture. Under these circumstances, the court cannot find that the forum-selection clause *as applied to these plaintiffs* is reasonable where plaintiffs had no opportunity under the express terms of the contract to reject the forum-selection clause without forfeiture of the entire purchase price and the imposition of additional penalties.

## CONCLUSION

For the reasons set forth above the motion to dismiss or transfer case is DENIED.

IT IS SO ORDERED.