Mary LOUSARARIAN, Plaintiff, Appellant,

v.

ROYAL CARIBBEAN CORP., as Successor in Interest to Royal Caribbean Limited, Defendant, Appellee.

No. 91–1548.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1991.

Decided Dec. 4, 1991.

Joseph M. Orlando with whom Nancy Benotti and Orlando & Associates were on brief, for plaintiff, appellant.

Thomas J. Muzyka with whom Clifford B. Thompson and Clinton & Muzyka were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

Plaintiff Mary Lousararian injured her foot and leg while reboarding defendant's cruise ship during a vacation in December 1988. Fourteen months later, she filed this negligence action, despite a provision in her ticket imposing a one-year limitation on the filing of personal injury suits. The district court found as a matter of law that the limitations period was enforceable against plaintiff, and it accordingly granted summary judgment for defendant. On appeal, plaintiff claims that the district court improperly resolved factual issues concerning the enforceability of the time bar provision. We affirm.

### Discussion

#### A. Legal Principles

■ Although a cruise ship operator is permitted by statute to set a shortened limitations period for claims against it, *see* 46 U.S.C.App. § 183b(a),[1] a body of caselaw has developed barring enforceability of such a provision unless the steamship company has made a "reasonable" effort to warn passengers of the restriction. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 350–51 (1st Cir.1988); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 863–64 (1st Cir.1983); *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 7–9 (1st Cir.1981). This precedent is designed to give passengers a fair chance to learn about conditions affecting their legal rights that otherwise might be buried within "the fine print of adhesion contracts of passage," *Shankles*, 722 F.2d at 864.

■ The specific inquiry into whether a steamship company has met the standard of "reasonable communicativeness" is two-pronged. *Shankles*, 722 F.2d at 865. First, a court must examine the facial clarity of the ticket contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. The second prong focuses on "the circumstances of the passenger's

---

1. 46 U.S.C.App. § 183b(a) provides, in relevant part:

   It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel ... transporting passengers ... from or between ports of the United States and foreign ports to provide by ... contract ... a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

possession of and familiarity with the ticket," *id.*, which involves scrutiny of "any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake," *id.* at 866. Given this two-step analysis, it is obvious that the determination of enforceability must be made on a case-by-case basis. "Differing circumstances may render the same ticket binding on one passenger in one case, yet invalid as against another passenger in another case." *Id.* at 864. *See also Muratore*, 845 F.2d at 351; *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 220 (6th Cir.1983).

■ The "reasonable communicativeness" of a particular ticket in particular circumstances is a question of law and, barring a genuine dispute of material fact, the determination is appropriate for resolution at the summary judgment stage of a case. *Shankles*, 722 F.2d at 867; *DeNicola*, 642 F.2d at 11. *See also Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1567 (11th Cir.1990); *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 45 (2d Cir.1990) (per curiam); *Barbachym*, 713 F.2d at 218; *Carpenter v. Klosters Rederi*, 604 F.2d 11, 13 (5th Cir. 1979).

### B. Application of the Principles

1. *Factual dispute.* Plaintiff's initial argument on appeal is that the district court never should have reached the two-pronged reasonableness inquiry because, to get there, it improperly resolved a preliminary factual dispute about whether she received the portion of the ticket containing the time bar language.

In an affidavit, plaintiff stated that she recognized her signature on the first page of the ticket packet—which had been retained by defendant and was attached as an exhibit to the Motion for Summary Judgment—but had no specific memory of any other portion of the ticket, including the part containing the limitations provision. She acknowledged receiving another part of the ticket, but stated that she discarded it "during or soon after the voyage in question."

■ Defendant responded to plaintiff's affidavit with an affidavit from its claims manager, Wendy Zepernick, describing the defendant's standard ticketing and boarding process.[2] According to Zepernick's affidavit, the first, or signature page, of the four-page ticket booklet is perforated to allow easy detachment by Royal Caribbean personnel at the time of boarding. A passenger who presented only the signature page already detached from the booklet would not be allowed to board. Before detaching the signature page, the Royal Caribbean representative conducting the boarding would check to be certain the document had been signed and then would remove and retain it.[3]

The rest of the ticket booklet is kept by the passenger, but the company maintains sample copies of its tickets. Zepernick attached to her affidavit a void ticket packet that she claimed was identical to the four-page booklet issued to and signed by plaintiff. The limitations provision is printed on the third page of the booklet.

Plaintiff contends that these competing affidavits created a genuine dispute concerning whether she received a ticket containing the limitations provision, precluding the judge from granting Royal Caribbean's motion for summary judgment. We disagree. Plaintiff's assertion that she does not remember the ticket booklet does not contradict Zepernick's affidavit testimony that plaintiff must have possessed the complete four-page packet to be allowed to board the cruise ship uneventfully, which she apparently did. Moreover, plaintiff acknowledges receiving some type of ticket that she discarded during or after her trip. Plaintiff failed to rebut in any significant way Zepernick's implicit assertion that she (plaintiff) had received the standard ticket booklet. On the evidence offered, a fact-

---

**2.** Zepernick, in fact, submitted two affidavits, the later containing more detail about the process. Our description is drawn from that second, supplemental affidavit.

**3.** The original of plaintiff's signature page was given to defense counsel in connection with this litigation.

finder would have been required to conclude that plaintiff received a copy of the entire ticket booklet. The court therefore did not impermissibly resolve a genuine factual dispute, *see Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990)[4], and we consequently must review its legal judgment that the limitations period was enforceable.

■ 2. *Prong One: Examination of the Ticket.* Beside plaintiff's signature on the front page of the ticket booklet is a notice distinguished from the remainder of the page because it appears in white type on a blue background. The notice reads:

THIS IS YOUR TICKET CONTRACT. IT IS IMPORTANT THAT YOU READ ALL TERMS OF THIS CONTRACT, PAGES 1, 2 & 3 NON–TRANSFERABLE, ALTERATIONS VOID TICKET.

Twelve separate provisions, some with several subsections, are listed on the three numbered pages that follow the front signature page. The first of these pages is labeled "CONTRACT FOR CARRIAGE OF PASSENGERS," and immediately below this heading is the message "IMPORTANT—PASSENGERS READ ALL CLAUSES". This message, like the notice on the signature page, is printed in white type on a blue background. Clause 2(VII) of the contract, located at the top of page 2 and containing the limitations provision, is the only other portion of the three-page contract that is printed in this reverse method.

The district court observed that the notice on the signature page of the ticket booklet "is not a model of clarity." It nevertheless concluded that the notice, when considered with the two statements contained at the top of page one of the contract, reasonably communicated to the ticketholder the existence of important contractual provisions.

Emphasizing the district court's criticism of the notice on the signature page, plaintiff argues that the court erred in ultimately finding that the content of the ticket was sufficiently communicative. She argues that the front-page statement is so ungrammatical and unclear that it obscures the underlying message, and that defendant's responsibility was to provide "a simple plain statement that could be understood by all."

We, like the district court, agree with plaintiff that the signature-page notice in this case is not perfect. Without a period following the third line, and in light of other punctuation within the notice, a reader may be inclined initially to read from line three to line four without pausing, producing the statement that pages one, two and three of the contract are non-transferable, rather than the intended statement that the ticketholder should read all terms of the contract contained on pages one through three.

We fail to see, however, how the imperfections in the notice were in any way misleading. The *entire* contract is contained on the three numbered pages, and so no matter how one reads the notice, the message is the same: the ticketholder should read all terms contained in the contract, and the contract is nontransferable. This understanding is confirmed quickly and easily by reference to the following pages, which begin with the heading "Contract for Carriage," and are clearly marked as Pages 1, 2, and 3. Moreover, the important reference points all are highlighted either by use of large type or reverse printing.

That the notice could have been clearer does not mean that the ticket was insufficiently communicative. Although a steamship company should strive to be as comprehensible as possible in alerting passengers to contractually imposed limitations on legal rights, the standard is one of reasonableness, not perfection. *See Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.1987). We therefore find no error in the district court's implicit conclusion that

---

4. In *Garside*, we observed that a genuine issue precluding summary judgment exists only "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial." 895 F.2d at 48 (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975)).

defendant did not fail the test of "reasonable communicativeness" on prong one.

■ 3. *Prong Two: Extrinsic Circumstances.* Because the crucial issue in determining whether it is fair to enforce a shortened filing deadline is the passenger's ability to become "meaningfully informed" of such a requirement, factors other than the clarity of the ticket can be significant. *Shankles*, 722 F.2d at 865 (extrinsic circumstances "may be of equal importance as the prominence of warnings and clarity of conditions"). In this case, the district court evidently believed that plaintiff had ample opportunity to learn about the limitations period even if she had failed to read the ticket booklet before discarding it. The court emphasized plaintiff's representation by three attorneys, the first of whom sought a settlement offer from defendant within a month after the cruise and the last of whom sent a demand letter more than three months before the limitations period had run. The court also pointed out that defendant's claims-handling agency *twice* sent letters to the attorneys advising that any correspondence by defendant was not to be deemed "a waiver of any defense or limitations available to them, *including those contained in their ticket of passage.*" Opinion at 8 (emphasis added)

Plaintiff argues on appeal that "prong two" was not properly considered at the summary judgment stage because her possession of and familiarity with the ticket was "sharply called into question" by her affidavit. She further contends that the district court erred in relying unduly on the involvement of counsel and the lawyers' collective failure to request a copy of the ticket contract at any time during the limitations period.

These arguments fall short of the mark. As discussed above, plaintiff's original possession of the ticket booklet containing the limitations provision is not, on this record, a matter of dispute. In addition, we think it clear that prong two's inquiry into "the passenger's possession of and familiarity with the ticket" does not depend upon *actual* knowledge of the terms in the contract of passage, but focuses instead on the *opportunity* for such knowledge. *See, e.g., DeNicola*, 642 F.2d at 11 (one-year limitation bars plaintiff's suit "even if her lack of knowledge of that provision is assumed").

In assessing plaintiff's opportunity here, the district court properly considered the fact that she had retained three lawyers. *See Shankles*, 722 F.2d at 867; *DeNicola*, 642 F.2d at 11; *Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 650 (D.Mass.1988); *Lieb v. Royal Caribbean Cruise Line, Inc.*, 645 F.Supp. 232, 235 (E.D.N.Y.1986). All three communicated with defendant's representatives well within the limitations period and easily could have requested a copy of the ticket booklet. The failure to do so is glaring in light of the defendant's expressly stated intention—twice—to rely on the defenses and limitations contained in the booklet. In *DeNicola*, 642 F.2d at 11, we found it "significant[ ]" in affirming summary judgment for the cruise line that, in a letter to plaintiff's attorney shortly after her injury, the company had alluded to its anticipated reliance on the defenses specified in the ticket. *See also Barkin*, 1988 A.M.C. at 650 ("The defendant should not be made to bear responsibility for the plaintiff's counsel's inexplicable delay in requesting the ticket or in reading the limitations provision contained therein.").

Although plaintiff argues that defendant had an affirmative obligation in response to her attorneys' letters to provide a copy of the ticket booklet and elaborate on the time bar provision, she provides no support for this assertion. We think it overstates the cruise operator's responsibility. The company reasonably could assume that plaintiff had retained her original ticket booklet and would refer to it for the details of the claimed defenses. That assumption became all the more reasonable as time passed and none of her attorneys requested a copy of the explicitly invoked defenses. In these circumstances, the fact that she had chosen to discard the contract and, as a result, did not have it in her possession throughout the limitations period, should

not render the defendant's otherwise reasonable communicativeness unreasonable.[5]

Indeed, the prevailing view seems to be that an injured passenger has a "powerful incentive," *DeNicola,* 642 F.2d at 11, and thus an affirmative responsibility, to become informed so long as the opportunity to do so exists.

> Although a passenger may almost never read all of the fine print on the ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury.

*Shankles,* 722 F.2d at 865. *See also DeNicola,* 642 F.2d at 11; *Nash,* 901 F.2d at 1568 (quoting above language from *Shankles*); *Marek,* 817 F.2d at 247 (quoting *Shankles* and Justice Cardozo in *Murray v. Cunard S.S. Co., Ltd.,* 235 N.Y. 162, 139 N.E. 226, 228 (1923) (" '[t]he passenger who omits to read takes the risk of the omission' ")); *Barkin,* 1988 A.M.C. at 650 ("That the plaintiff chose not to read the ticket does not negate the fact that NCL reasonably communicated the terms of the contract, including the time limitation for filing suit."); *Lieb,* 645 F.Supp. at 235 (quoting *Shankles*).

In summary, plaintiff in this case had ample opportunity to become aware of the limitations provision, which was made accessible to her both by the physical characteristics of the ticket booklet and by the surrounding circumstances. We therefore hold that the district court correctly found the provision to be binding on plaintiff and, because she failed to file suit within the one-year limitation period, correctly granted summary judgment for defendant.

*Affirmed.*

---

5. Plaintiff argues that we should scrupulously apply the high standard articulated by Judge Friendly in *Silvestri v. Italia Societa Per Azioni di Navigazione,* 388 F.2d 11 (2d Cir.1968), regarded as the seminal case in this area of law. That test is whether the company did *"all it reasonably could* to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." *Id.* at 16 (emphasis added). We agree with the Third Circuit that this standard, taken literally, is overly strict:

> "Thus, even though the courts continue to use the 'all it reasonably could' language, application of the standard involves notions of reasonableness and not hypothesizing some further step the shipowner could possibly have taken."

*Marek,* 817 F.2d at 245 (quoting district court opinion, *Marek,* No. 84–2214, mem. op. at 3, 1986 WL 7916 (E.D.Pa. July 15, 1986)). Accordingly, we, as well as other courts, have viewed the *Silvestri* language as setting the same standard of reasonable communicativeness that we apply today. *See Muratore,* 845 F.2d at 351; *Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 46 (2d Cir.1990) (per curiam) (citing cases).