**Donna and Joseph SASSO, Plaintiffs,**

**v.**

**TRAVEL DYNAMICS, INC., Defendant.**

**Civ. A. No. 93–CV–10533–PBS.**

United States District Court,
D. Massachusetts.

Feb. 18, 1994.

Joseph R. Donohue, Thornton, Early & Naumes, Boston, MA, for plaintiffs.

Thomas J. Muzyka, Clinton & Muzyka, Boston, MA, for defendant.

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SARIS, District Judge.

Plaintiff Donna Sasso ("Sasso") brings this action seeking damages for personal injuries she suffered as a result of a slip and fall during an Antarctic cruise aboard the M/V ILLIRIA. Plaintiff Joseph Sasso, her husband, seeks damages for loss of consortium. Defendant Travel Dynamics, Inc. ("Travel Dynamics"), the ship operator, has moved for summary judgment on the ground that plaintiffs' negligence claims are barred by the one-year limitations period contained in their passage contract. For the reasons set forth below, after hearing, the defendant's motion is **ALLOWED.**

## UNDISPUTED FACTS

The court treats the following facts as undisputed for the purposes of this motion for summary judgment. On February 11, 1990 Sasso and her husband boarded the cruise ship M/V ILLIRIA which was operated by Travel Dynamics. As she boarded the vessel, she was given a ticket which indicates it was issued January 18, 1990. Although she concedes receiving the ticket, which is the first page of the passenger contract ("the Contract"), Sasso does not remember receiving or reading all the pages of the Contract. On February 13, 1990 she fell aboard the ship and broke her leg. Sasso, accompanied by her husband, was evacuated from the vessel to on-shore medical facilities for treatment. They then flew to Florida. By May 1990, plaintiffs had consulted legal counsel. Plaintiffs filed this suit on January 27, 1993 in the Essex County Superior Court. The action was removed to this court on March 11, 1993, pursuant to 28 U.S.C. § 1332, on the ground of diversity of citizenship.

## DISCUSSION

■ A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not

significantly probative, summary judgment may be granted.' " *Id.* (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

As the basis for its motion for summary judgment, Travel Dynamics asserts that plaintiffs' claims, filed nearly three years after Sasso's accident, are time-barred as a matter of law by the one-year limitations provision ("the Provision") contained in the Contract.

### 1. Receipt of Contract

■ Sasso asserts that she has raised a genuine dispute as to whether plaintiffs ever received a major portion of the Contract. When asked during her deposition if she recalled having possession of the Contract "at some point in time," Sasso responded: "As I remember, they gave us the ticket when we got on the vessel." When presented with a duplicate copy of the Contract to refresh her memory, Sasso stated: "I remember that it looked like this because I still had—I think I still had it ... I don't remember receiving the whole—all these pages." However, the affidavit of James R. Smith, Travel Dynamics' Vice President of Operations and Travel Services, states that a package of "final travel documents," which included the entire Contract, was mailed to the Sassos by Federal Express on January 18, 1990, more than three weeks prior to the cruise, and that the package was received *and signed* for by Sasso on January 19, 1990. This version is consistent with the face sheet of the Contract which states it was issued on January 18, 1990.

Plaintiffs have failed to present specific, provable facts to establish a triable issue of fact as to whether they received the entire Contract. Although there might be a disputed issue of fact as to *when* they received the ticket, Sasso's inability to recollect whether or not they received the entire Contract is not significantly probative to create a genuine issue of material fact, particularly in light of Smith's affidavit and the date the ticket was issued. *Compare Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 9–10 (1st Cir. 1991) ("*Lousararian* ") (where plaintiff's similarly vague recollection regarding receipt of

ticket/contract failed to raise a genuine dispute when directly rebutted by claims manager's detailed affidavit regarding defendant's standard ticketing procedures).

## 2. *Notice*

■ As a second basis for defeating defendant's motion, Sasso contends that defendant has not met its burden of proving as a matter of law that it had "reasonably communicated" to plaintiffs the shortened limitations period.

■ A cruise line is expressly permitted by statute to set a shortened limitations period for suits against it. *See* 46 U.S.C. § 183b(a) (Supp. III 1991).[1] However, federal courts have barred the enforceability of such provisions where the cruise line has not provided its passengers with reasonable notice of the restriction. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 350–51 (1st Cir. 1988). The First Circuit has adopted a two-prong test for determining whether a limitations provision has met the standard of "reasonable communicativeness." *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir.1983) ("*Shankles* "). First, the court must examine in detail the physical characteristics of ticket/contract "and whether its language and appearance make the relevant provisions sufficiently obvious and understandable." *Lousararian*, 951 F.2d at 8. A court should consider such factors as (1) the size, case and boldness of type; (2) the conspicuousness and clarity of the notice on the front page of the ticket/contract; and (3) the ease with which a passenger can read the provisions at issue. *Id.* at 10; *Shankles*, 722 F.2d at 864.

The second prong of the test requires an examination of the extrinsic circumstances "surrounding the passenger's purchase and subsequent retention of the ticket/contract." *Shankles*, 722 F.2d at 865. It is well-established that the reasonableness of a cruise line's notice to passengers is a question of law, suitable for resolution by summary judg-

ment. *Lousararian*, 951 F.2d at 9; *Shankles*, 722 F.2d at 867; *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 11 (1st Cir.1981) ("*DeNicola* ").

### a. *Prong One: Examination of the Ticket*

The Contract consists of an eight page, 4″ × 8″ booklet, bound on the left edge, and identified on the first page as **"PASSAGE CONTRACT"** in bold, large print and all capital letters. The first three pages form the ticket portion of the Contract: the first page is clearly identified as the "Passenger Copy"; the second and third pages are duplicates of the first page and are marked "Purser Copy" and "Office Copy," respectively. At the bottom center of each of these three pages is a statement which is introduced by the bold-printed words **"Important Notice"** and continues:

> In accepting this Passage Contract, the passenger agrees to be legally bound by the terms printed herein. Please read carefully the attached pages 1–5

The remaining five pages of the Contract set forth twenty-two separate terms of passage. All of the pages are perforated for easy detachment. At the top of the first of these five pages, beneath the bold-printed, capitalized heading, **"PASSAGE CONTRACT,"** is another notice in bold type and all capital letters which reads: **"IMPORTANT: PLEASE READ FOLLOWING TERMS OF PASSAGE CONTRACT."**

The individual terms of passage are printed on double-sided, white paper in small, but legible blue print. The Provision is located on the last of these five pages, thus the final page of the Contract, and reads as follows:

### Art. 20—TIME LIMIT ON SUITS

Suits to recover on any claim against the Company shall be instituted:

(1) as to claims mentioned in subdivision (a) of Article 19 above, within one (1) year from the day when the loss of life or injury occurred, in accordance with Section 4283A

---

1. 46 U.S.C.App. § 183b(a) provides in relevant part:

> It shall be unlawful for the manager, agent, master, or owner of any seagoing vessel ... transporting passengers ... from or between ports of the United States and foreign ports to

> provide by ... contract ... a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

of the Revised Statutes of the United States;

(2) as to all other claims, including breach of contract, within 6 months from the passenger's arrival at destination or, in the case of non-arrival, from the day on which the passenger and/or baggage should have arrived.

Plaintiffs argue that, when compared to other ticket/contracts at issue in cases where summary judgment has been granted, the Contract fails to satisfy the first prong of the "reasonable communicativeness" standard. Specifically, plaintiffs contend that: 1) the notice on the first page of the Contract is not sufficient to draw one's attention to the existence and significance of the terms and conditions within, and 2) the remainder of the Contract does not cure the defects of the front page. This court disagrees, and holds that, when examined in light of other ticket/contracts found to satisfy the first prong of this test, the Contract does provide reasonable notice of the Provision.

Despite the fact that the notice on the first page is written in small print and is located at the bottom center of the page, it is introduced by the bold-printed words **"Important Notice"** and constitutes the *only* complete sentence on the entire front page. Furthermore, the plain language of the notice clearly warns the holder that it will be "legally bound" by the terms printed within and tells the passenger to read the terms "carefully." *See Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 224–25 (1st Cir.1992) ("*Jimenez*") (ticket provided reasonable notice of limitations provision even though notice on bottom of front page appeared in small print, because it was one of only three complete sentences on front page and plainly directed passengers to terms within); *Lousararian*, 951 F.2d at 10 (even where front-page notice was "not a model of clarity," it was sufficient to direct plaintiff to the ensuing three pages of contract terms). The main body of the Contract does contain a second notice to passengers, again advising them to read the terms of passage. In addition, each individual term of passage, including the Provision, is introduced by a bold-faced, upper-case caption indicating its con-

tents. Finally, the language of the Provision is neither ambiguous nor burdensome to read.

Relying on *O'Connell v. Norwegian Caribbean Lines, Inc.*, 639 F.Supp. 846, 851 (N.D.Ill.1986) ("*O'Connell*"), plaintiffs argue the carrier did not make reasonable efforts to warn passengers of its liability limitations because the face of the ticket did not apprise the passengers of the contractual period of limitations within. *O'Connell* is distinguishable. There, the carrier placed the incorporation statement on the passenger copy of the ticket, which was the fourth page of the ticket, rather than on the face of the ticket. Further, the *O'Connell* court placed the burden of proof on the carrier to show that "it did all that it reasonably could to warn passengers of its limited liability." *Id.* at 848, citing *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11, 17–18 (2d Cir.1968). In *Lousararian*, 951 F.2d at 12 n. 5, the First Circuit rejected that standard which, if taken literally, was "overly strict."

■ True, defendant could have made the limitations provision itself more conspicuous. *Lousararian*, 951 F.2d at 10 (limitations provision was the *only* specific term of passage highlighted in reverse print); *DeNicola*, 642 F.2d at 10 (limitations provision was the *first* of the terms of passage). It is well-established, however, that while a cruise line "should strive to be as comprehensible as possible in alerting passengers to contractually imposed limitations on legal rights, *the standard is one of reasonableness, not perfection.*" *Lousararian*, 951 F.2d at 10 (emphasis added). Thus, in consideration of the Contract as a whole, this court concludes that defendant has satisfied the first prong of the "reasonable communicativeness" test.

b.  *Prong Two: Extrinsic Circumstances*

■ In its analysis of the second prong of the "reasonable communicativeness" test, the court should focus on "any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Shankles*, 722 F.2d at 866. This analysis "does not depend upon *actual* knowledge of the terms in the con-

tract of passage, but focuses instead on the *opportunity* for such knowledge." *Lousararian*, 951 F.2d at 11. The fact that the plaintiff may not have read the ticket/contract is not dispositive:

> Although a passenger may almost never read all of the fine print on the ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury.

*Shankles*, 722 F.2d at 865. As discussed above, plaintiffs have not presented specific provable facts which create a genuine issue of material fact as to their receipt of the Contract. Whether plaintiffs received the Contract three weeks before the cruise on January 19, 1990 or at the point of boarding the ILLIRIA is not material to their ability to become "meaningfully informed" of its contents, because their strongest incentive to apprise themselves of the terms and conditions only arose at the moment Sasso was injured. Even if plaintiffs had only received the first page of the Contract, it clearly states that the passenger should "read carefully the attached pages 1–5." This was sufficient notice to the plaintiffs, who retained the face sheet, and to their attorney that they should obtain the entire Contract. *See Kendall v. American Hawaii Cruises*, 704 F.Supp. 1010, 1017 (D.Haw.1989) (even where page containing time limitation was missing, the title page alerted plaintiffs to inquire into the need for the missing pages).

A common factor considered in assessing a passenger's ability to become "meaningfully informed" of a shortened limitations period is the passenger's access to counsel prior to the expiration of the period. *Jimenez*, 974 F.2d at 225; *Lousararian*, 951 F.2d at 11; *Shankles*, 722 F.2d at 866. The record demonstrates that plaintiffs had consulted with counsel within three months after Sasso's accident. *See Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 650 (D.Mass. 1987) ("[T]he plaintiff was sophisticated enough to take her claim to an attorney who knew or should have known the importance of reading the terms of the contract.") By

May 19, 1990, nearly nine months *prior* to expiration of the limitations period, plaintiffs' attorney had been in contact with defendant regarding plaintiffs' Antarctic cruise. However, there is nothing in the record which indicates that plaintiff's attorney specifically requested a copy of the Contract or inquired as to its contents. "The defendant should not be made to bear the responsibility for the plaintiff's counsel's inexplicable delay in requesting the ticket or in reading the limitations provision contained therein." *Id.* Defendant has satisfied the second prong of the "reasonable communicativeness" test.

### 3. *Loss of Consortium*

Plaintiff Joseph Sasso's derivative claims for loss of consortium are also time-barred. *See Miller v. Lykes Bros. S.S. Co., Inc.*, 467 F.2d 464, 466–67 (5th Cir.1972) (where court held that contractual limitations provision, which effectively barred one plaintiff's claims for personal injury, also precluded spouse from recovery for loss of consortium).

### ***ORDER***

For the foregoing reasons, it is hereby ***ORDERED*** that the defendant's motion for summary judgment on all counts of the complaint be ***ALLOWED.***