Barbara TATEOSIAN et al.

v.

**CELEBRITY CRUISE
SERVICES, LTD.**

No. 99–517–Appeal.

Supreme Court of Rhode Island.

April 12, 2001.

Ronald L. Bonin, Cranston, for Plaintiff.

Stephen P. Sheehan, Providence, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

The decisive issue in this case is whether the terms of a cruise contract were fundamentally unfair and specifically, its forum selection clause. Barbara Tateosian (Barbara) and Glenn Tateosian (Glenn) (collectively, plaintiffs) have appealed a summary judgment in favor of the defendant, Celebrity Cruise Services, Ltd. (Celebrity) and the dismissal of their negligence claim

against Celebrity.[1] This case came before the Supreme Court for oral argument on March 8, 2001, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and after considering the arguments of counsel, we are of the opinion that cause has not been shown, and therefore the appeal will be decided at this time.

The plaintiffs purchased passage on one of Celebrity's ships for a cruise scheduled to begin on March 29, 1997. On April 1, 1997, while aboard Celebrity's ship Zenith, Barbara became ill from salmonella poisoning that required her to be hospitalized for ten days, following which plaintiffs missed several weeks of employment. The plaintiffs filed a complaint in the Superior Court of Kent County, Rhode Island, on October 26, 1998, alleging that Barbara's illness had been the result of Celebrity's negligence in preparing food served to the passengers. Barbara sought compensation for medical expenses, lost wages, and pain and suffering; Glenn sought compensation for medical expenses, lost wages, and loss of consortium. On September 1, 1999, Celebrity filed a motion for summary judgment to dismiss the complaint on the grounds that under the terms of the cruise contract, a one-year time limitation for litigation rendered plaintiffs' claims "time-barred." Celebrity further contended that the venue was improper due to a forum selection clause in the transportation contract. Following a hearing, the motion justice concluded that the forum selection clause was reasonable and valid. He granted the summary judgment, stating that "[w]hether or not the limitation was reasonably communicated to plaintiffs is a

---

1. Although two or more persons may file a joint notice of appeal pursuant to Rule 3(b) of the Supreme Court Rules of Appellate Procedure, each party is required to pay the prescribed $150 filing fee pursuant to Rule 5(a). This Court has previously held that "[f]ailure of a party to tender the requisite fee renders its appeal invalid." *Kirby v. Planning Board of Review of Middletown,* 634 A.2d 285, 288 (R.I.1993). It appears from the record that only Barbara's filing fee was paid in this appeal, and therefore, Glenn is not a party before this Court.

question of law * * * and there is no material fact [remaining]." The plaintiffs appealed.

▉ The standard for reviewing a grant of summary judgment is clear: we review "the grant of a motion for summary judgment on a *de novo* basis, applying the same criteria as the trial court. * * * Accordingly, 'we shall affirm a summary judgment if, after reviewing the evidence in the light most favorable to the nonmoving party, we are of the opinion that no genuine issue of material fact exists and "that the moving party is entitled to judgment as a matter of law." ' * * * 'Moreover, a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.' " *Bennett v. Napolitano,* 746 A.2d 138, 140 (R.I.2000).

▉ The passenger ticket contract at issue in this case is considered a maritime contract, the interpretation and enforcement of which is governed by federal maritime law. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622, 629 (1991). Forum selection clauses have been held *prima facie* valid, *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513, 520 (1972), but they are subject to judicial scrutiny for fundamental fairness. *See Carnival Cruise Lines, Inc.,* 499 U.S. at 595–97, 111 S.Ct. at 1528–29, 113 L.Ed.2d at 633–34 (holding that forum selection clause was valid because it did not limit a cruise line's liability, passengers conceded they had notice of the choice of forum, and no bad faith motive for the choice of forum was demonstrated). A party claiming that the fundamental fairness standard has not been met bears "a heavy burden of proof." *Id.* at 592, 111 S.Ct. at 1526, 113 L.Ed.2d at 631. The reasonableness of a cruise line's notice to passengers is a question of law, "the determination [of which] is appropriate for

resolution at the summary judgment stage of a case." *Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 9 (1st Cir.1991).

▉ In their appeal, plaintiffs argued that the trial justice erred in granting a summary judgment because he "failed to investigate and address the issue of the fundamental fairness of the forum selection clause in the contract," as required by *Carnival Cruise Lines, Inc.* Specifically, plaintiffs alleged that Celebrity's cancellation policy did not allow them to "reject the contract with impunity" and that consequently, the forum selection clause was fundamentally unfair. Although defendant responded that this issue was not raised in Superior Court, our review of the record revealed that in opposing defendant's motion for summary judgment, plaintiffs argued that "this contract was basically a 'take it or leave it' proposition with the terms and conditions only disclosed after the cruise was paid for," and hence, it did not permit "any opportunity for negotiation or modification." Therefore, we deem the issue sufficiently preserved.

Pursuant to 46 U.S.C.S. Appx. § 183b(a) (Law.Co-op.1987), titled "Stipulations limiting time for filing claims and commencing suit," a cruise line is permitted to shorten time-limitation periods to no less than one year from the date of injury or death in suits brought against it for loss of life or bodily injury:

"Time periods. It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel * * * transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."

■ To be valid, such time limits must meet the "reasonably communicated" test enunciated in *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir.1983): "Does the contract reasonably communicate to the passenger the existence therein of important terms and conditions which affect legal rights?" The inquiry into whether this standard has been met is two-pronged, focusing on "the facial clarity of the ticket contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable" and on the specific circumstances allowing a passenger "to become meaningfully informed of the contractual terms at stake." *Lousararian*, 951 F.2d at 8–9 (quoting *Shankles*, 722 F.2d at 865, 866).

■ Glenn received their cruise ticket, consisting of an "embarkation coupon"—which Glenn signed—and an attached two-page document that set forth the "contract terms and conditions of transportation." In addition to identifying the owners of the ticket and specifying details of the voyage, the embarkation coupon featured a four-and-a-half inch by one-half inch text block of contrasting color with the following notice clearly set forth:

> "**Important Notice.** Please read carefully the following contractual terms and conditions which govern your rights and all aspects of your agreement with the carrier. The contract contains important provisions that affect your legal rights and are binding upon you, particularly sections 6, 7, 8, 9, 10, 11, and 12 governing time limits and venue for suits and governing the provision of medical care and other services by independent contractors."

Beneath this notice and above the space for a passenger's signature was the following warning: "Void if detached from cruise contract." Paragraph 9 of the cruise contract attached to the embarkation coupon stated:

> "The Carrier is not liable for any personal injury or death unless suit is insti-

tuted against the Carrier within one year after injury or death occurred, and unless suit is instituted in the United States District Court for the Southern District of New York as an admiralty or maritime action without demand for jury trial."

A sworn affidavit by the manager of Celebrity's claims department submitted at the hearing stated that "[b]oth documents must be presented physically attached at time of boarding, and a passenger who presents merely the embarkation coupon will not be permitted to board. The plaintiffs retained the balance of the ticket, consisting of these terms and conditions."

Given these facts, we conclude that plaintiffs had clear notice of the cruise contract terms because the warnings on the embarkation coupons were sufficiently obvious and were emphatically brought to a passenger's attention. *Lousararian*, 951 F.2d at 8–9; *Shankles*, 722 F.2d at 866. Although plaintiffs may not have studied the embarkation coupon and the attached passage contract carefully when they purchased the ticket or even after starting their voyage, they certainly had ample incentive to do so once they believed they had a claim against the cruise line. The plaintiffs did comply with the notice requirement by their attorney's letter of April 28, 1997, which advised Celebrity of Barbara's illness and requested the name of Celebrity's legal representative or claims adjuster. In its response by a letter dated May 13, 1997, Celebrity informed plaintiffs that "[a]ll rights are reserved including but not restricted to the terms and conditions of the cruise ticket contract," thereby reminding plaintiffs of the limitations in their ticket contract. The plaintiffs' failure to request another copy of their cruise contract in the event they no longer retained it and their failure to pursue their claim in the appropriate forum within the agreed upon time limits were fatal to their claim.

The plaintiffs contended they would not have been able to reject the cruise contract with impunity at the time they received the tickets and were informed of its terms. The plaintiffs alleged that under the terms of Celebrity's comprehensive travel brochure, an immediate cancellation would have resulted in a forfeiture of 50 percent of the purchase price, and a cancellation on the following day would have forfeited the entire amount, according to their interpretation of the contract's applicable rules. The plaintiffs argued that such a substantial financial penalty rendered the forum selection clause unenforceable, citing *Stobaugh v. Norwegian Cruise Line Limited,* 5 S.W.3d 232 (Tex.Ct.App.1999) (holding that forum selection clause did not pass test of fundamental fairness when it was imposed after payment for passage) and *Schaff v. Sun Line Cruises, Inc.,* 999 F.Supp. 924 (S.D.Tex.1998) (holding that applying the forum selection clause was fundamentally unfair because passenger's cancellation would have forfeited entire ticket price upon receipt). These cases, however, are factually distinguishable from plaintiffs' circumstances. In *Stobaugh,* the passengers challenging the validity of the forum selection clause sent full payment in June, but did not receive the passenger ticket including the "Contract of Passage" until on or after August 8. *Stobaugh,* 5 S.W.3d at 233. Similarly, the passengers in *Schaff* did not receive the ticket until three or four days before commencement of the cruise and after full payment had been made. *Schaff,* 999 F.Supp. at 925. Moreover, the forum selection clause in *Schaff* required litigation in Athens, Greece, although the passenger departed and returned to Galveston, Texas. *Id.*

 In the case before us, plaintiffs apparently did not render payment until Glenn signed the cruise ticket coupon which provided the "important notice"

warning.[2] We consider Glenn's signature on the coupon on which both names were printed to constitute acceptance of the ticket for both plaintiffs and sufficient notice of the contractual conditions. *See, e.g., Marek v. Marpan Two, Inc.,* 817 F.2d 242, 247 (3d Cir.1987) (holding that a passenger had notice of the contract terms although her traveling companion received and held the passenger's ticket). Consequently, at the point when plaintiffs were alerted to the importance of reading the contractual terms before signing the embarkation coupon, they then had the opportunity to reject the contract terms without incurring any financial penalty. Moreover, plaintiffs' claim was filed in Rhode Island eighteen months after Barbara's illness. Both the venue and time of filing directly contravened the terms of their contract with Celebrity, of which they had been notified and which they had acknowledged. In light of these undisputed facts and with no material questions of fact remaining, we conclude that summary judgment for Celebrity was correct.

For these reasons, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which the papers in the case may be returned.

Chief Justice WILLIAMS did not participate.

---

**2.** Although plaintiffs' attorney suggested at oral argument that the tickets may have been purchased by telephone using a credit card and that plaintiffs did not receive the terms of the cruise contract until embarkation, no evidence of the precise sequence of events is presented in the record.