Veronica **GONZALEZ–MARTINEZ,** et al., **Plaintiffs,**

v.

**ROYAL CARIBBEAN CRUISES LTD., et al., Defendants.**

Civil No. 14–01255 (ADC).

United States District Court, D. Puerto Rico.

Signed March 26, 2015.

Carlos Fernandez–Nadal, Carlos Fernandez Nadal, Ponce, PR, for Plaintiffs.

Jose Ramon Rivera–Morales, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

Plaintiffs, Verónica González–Martínez ("Verónica"), Christian L. Rosa–Ramos ("Christian"), Kristalee Rosa–González ("Kristalee"), Elizabeth González–Martínez ("Elizabeth"), Zujeily Rodríguez–González ("Zujeily"), Dolores Del Valle ("Dolores"), and Alexis P. Healion ("Alexis") (collectively, "plaintiffs"), filed a maritime law action against Royal Caribbean Cruises Ltd. ("Royal Caribbean"), ABC Insurance Company, and XYZ Insurance Company (collectively "defendants"), seeking monetary relief for Royal Caribbean's alleged negligence during a cruise. **ECF No. 1.**

Pending before the Court is Royal Caribbean's Motion to Transfer Based on Forum Selection Clause ("the motion to transfer"). **ECF No. 8.** Plaintiffs have opposed the motion to transfer, and Royal Caribbean has filed a reply to plaintiffs' opposition. **ECF Nos. 9, 13.**

### I. Plaintiffs' Allegations

In their complaint (**ECF No. 1**), plaintiffs allege as follows. Verónica and Christian purchased tickets from Royal Caribbean for a cruise on the ship Adventure of the Seas in order to celebrate Kristalee's, their daughter, birthday. *Id.* at ¶¶ 10–11. They purchased tickets for themselves, Kristalee, Zujeily, and Alexis. *Id.* at ¶ 11. The ship sailed from San Juan on March 24, 2013 to the Caribbean, and, on March 28, 2013, reached St. Lucia. *Id.* at ¶¶ 12–13. Plaintiffs purchased tickets for an excursion around St. Lucia, but, by midday, Kristalee had suffered a "hypoglycemic shock." *Id.* at ¶¶ 14–15. Christian and

Verónica took a taxi back to the port with Kristalee in order for her to receive medical attention, however, once they arrived at the port, authorities from Royal Caribbean denied them access to the ship based on the authorities' belief that Kristalee was intoxicated with alcohol and a minor. *Id.* at ¶¶ 15–16. The authorities did not test Kristalee for alcohol or provide her with medical attention, and informed plaintiffs that they would have to stay on St. Lucia until Kristalee recovered. *Id.* at ¶¶ 17–18.

Plaintiffs were not granted access to the ship or their belongings, and, eventually, the ship sailed away from St. Lucia without plaintiffs. *Id.* at ¶¶ 18–19. Kristalee was taken to a hospital in St. Lucia, and, after her release, plaintiffs were scared because they were in a foreign country and did not know what to do. *Id.* at ¶¶ 20–21. Verónica could not sleep for three days because she was worried for the group's safety. *Id.* at ¶ 25. In Puerto Rico, Elizabeth and Dolores were "desperate" about their daughters being left on St. Lucia after Verónica informed them of the situation. *Id.* at ¶ 24. Plaintiffs arrived back in Puerto Rico on March 30, 2013. *Id.* at ¶ 28.

## II. Royal Caribbean's Motion to Transfer

In the motion to transfer, Royal Caribbean moves for an order, pursuant to 28 U.S.C. § 1404(a), transferring this action to the U.S. District Court for the Southern District of Florida. **ECF No. 8.** Royal Caribbean asserts that the contract of carriage between it and plaintiffs contained a series of clauses and conditions, including a forum selection clause in which the parties agreed that all disputes would be litigated in Miami, Florida. *Id.* at 3–4. Royal Caribbean further asserts that the forum selection clause is valid and enforceable under federal law, and thus, this action should be transferred in compliance with said clause. *Id.* at 6–8.

In opposition, plaintiffs raise a number of challenges to enforcing the forum selection clause. **ECF No. 9.** First, plaintiffs argue that enforcement would constitute an undue burden, as all plaintiffs reside in Puerto Rico and do not have the economic means to litigate their action in Miami. *Id.* at 1–2. Second, plaintiffs assert that the forum selection clause is vague and, under Puerto Rico law, such a vague clause should be construed in favor of the non-drafting party. *Id.* at 2–3. Third, plaintiffs allege that, when they purchased their tickets for the cruise, the booklet containing the forum selection clause and the other contract terms, was not included. *Id.* at 3. Plaintiffs allege that they did not receive said booklet until after their tickets were purchased. *Id.* Fourth, plaintiffs assert that the contract terms should have been drafted in Spanish, as plaintiffs cannot be expected to read and understand a language different from their own. *Id.* at 3–4. Fifth, plaintiffs contend that the font of the forum selection clause was below 12 point. *Id.* at 4.

In reply, Royal Caribbean argues that the forum selection clause is governed by federal maritime law, the fact that the clause was not negotiated between the parties does not invalidate it, and plaintiffs do not provide any specific reasons for why they cannot litigate in Florida. **ECF No. 13.**

## III. Legal Standard

Pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"), "[f]or the convenience of parties and witnesses, in the interest of justice," a court may transfer an action to any other district where it might have been brought or to any district to which all parties have consented. When this provision is applied in the context of a forum

selection clause, the U.S. Supreme Court has held that such a clause must be " 'given controlling weight in all but the most exceptional cases.' " *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 571 U.S. ——, ——, 134 S.Ct. 568, 579, 187 L.Ed.2d 487 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The Supreme Court explained that, in a typical case not involving a forum selection clause, a court considering a § 1404(a) motion must weigh "the convenience of the parties and various public-interest considerations," and determine, "on balance," whether transfer would comply with § 1404(a). *Id.* at 581.

■ However, "when the parties' contract contains a valid forum-selection clause," the normal § 1404(a) analysis is adjusted in three ways. *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, a court should not consider the private interests of the parties, as these weigh "entirely" in the preselected forum's favor. *Id.* at 582. As a result, a court may only consider factors related to the public interest. Third, a transfer under § 1404(a) will not carry with it the original venue's choice-of-law rules, which may affect public interest considerations. *Id.* In summary, to defeat a transfer pursuant to a forum selection clause, the non-moving party must show that public interest factors "overwhelmingly disfavor a transfer." *Id.* at 583.

As the Supreme Court noted in *Atlantic Marine*, the § 1404(a) analysis presupposes a contractually valid forum selection clause. *Id.* at 581 n. 5. Here, the forum selection clause is found in the ticket contract for plaintiffs' cruise through the Caribbean. *See* **ECF No. 8–1** at 17. As the parties agree, the forum selection clause is a standard provision found, in the same or similar fashion, in many other cruise ship ticket contracts. *See* **ECF Nos. 8** at 7; **9** at 2. The validity of such clauses has been addressed by the Supreme Court and the First Circuit Court of Appeals. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court held that forum selection clauses in "form passage contracts" are not unenforceable merely because they are not the result of a bargained-for exchange between the parties. *Id.* at 593–94, 111 S.Ct. 1522. Instead, such clauses should be scrutinized for fundamental fairness. *Id.* at 595, 111 S.Ct. 1522. In *Shute*, the Supreme Court concluded that the forum selection clause should have been enforced because (1) there was no indication that the forum selected was set to discourage the pursuit of legitimate claims, (2) there was no evidence that the plaintiffs' consent to the clause was obtained by fraud or overreaching, and (3) the plaintiffs conceded that they were given notice of the clause. *Id.*

■ With respect to notice, in this Circuit, a court must inquire as to whether the contract "reasonably communicate[d]" to the passenger the existence of important terms and conditions therein. *Shankles v. Costa Armatori*, 722 F.2d 861, 864 (1st Cir.1983). In making this inquiry, a court considers the following factors. First, a court assesses the physical characteristics of the contract, including the size of type, conspicuousness and clarity of notice on the ticket face, and the ease that the pertinent provisions can be read. *Id.* at 864. In doing so, the court asks whether the relevant provision is "sufficiently obvious and understandable." *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 8

(1st Cir.1991). Second, a court must evaluate "the circumstances surrounding the passenger's purchase and subsequent retention" of the contract, focusing on "any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Shankles*, 722 F.2d at 865–66. This two-step process is, thus, made on a case-by-case basis. *Id.* at 866; *Lousararian*, 951 F.2d at 9.

## IV. Discussion

### A. Validity of the Forum Selection Clause

#### 1. Physical Characteristics of the Provision[1]

The first elucidation to the provision containing the forum selection clauses comes on the cover page of the Guest Ticket Booklet. ECF No. 8–1 at 6. At the bottom of that page, in bold and capital letters, the guest is·alerted to an "Important Notice." Below this warning, in bold but smaller and uncapitalized type, the guest is informed that the booklet contains the ticket contract for her cruise, the contract contains limitations of the guests' rights, and it is important to read all of the contract's terms, with "particular attention to Sections 11 and 12." The warning also instructs guests to retain the contract for future reference. *Id.*

After the guest leafs through pages ·on various sundry matters such as a summary of the cruise journey, necessary travel documents, how to get ready for the cruise, and frequently asked questions, the guest arrives at the ticket contract. *Id.* at 7–18. The guest is alerted to the ticket contract by the bold and large type announcement at the top of page 12 of the booklet "Cruise/Cruisetour Ticket Contract." *Id.* at 17. Immediately below this banner, in bold but less substantial type, is an instruction for the guest to read all clauses in the contract. *Id.* The guest is then faced with a multitude of provisions, 21 to be precise. *Id.* at 17–18. These provisions are less generously apportioned, being in smaller type and unbolded. *Id.* However, provisions 11 and 12—the same provisions to which the guest was alerted on the cover page—are entirely capitalized. *Id.* at 17.

The pertinent provision for this analysis is provision 11, as it makes up the forum selection clause. Due to its obvious importance, the Court refers to it verbatim:

> It is agreed by and between passenger and carrier that all disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated, if at all, in and before a court located in Miami, Florida, U.S.A., to the exclusion of the courts of any other state, territory or country. Passenger hereby waives any venue or other objection that he may have to any such action or proceeding being brought in any court located in Miami, Florida.

*Id.* Following the contract terms, the guest finds a form for setting up an account to settle any charges incurred while onboard the cruise ship, an information form, and tags to place on the guest's luggage. *Id.* at 19–21. In addition to the booklet, Royal Caribbean has also provided documents containing certain plaintiffs' signatures on what appears to be the online check-in for the cruise. *See* ECF No. 8–1 at 24, 44. ▮ Based on the Court's review of the language, presentation, and warning of the forum selection clause, the Court finds

---

1. The Court draws its analysis of the physical characteristics of the provision from the two Guest Ticket Booklets that Royal Caribbean provided as an exhibit to its motion to transfer. ECF No. 8–1 at 623, 26–43. Because the Guest Ticket Booklets are identical, other than the names of the plaintiff-signatories, the Court will cite to the first booklet only.

that the same satisfies the first part of the reasonable communication test. First, plaintiffs were alerted to the importance of Sections 11 and 12 of the contract—and thus the forum selection clause—on the cover page of the booklet. Although this alert was placed at the bottom of the page, it is sufficiently obvious to the reader given that it is in bold and preceded with a capitalized heading of its importance. ECF No. 8–1 at 6. Second, assuming that a person would then turn, as instructed, to Sections 11 and 12, she would be faced with, at first blush, the figurative maze of the small but legible type of the contract's terms and conditions. Despite the mass of small writing on the pages of the contract, the contract is only two pages in length, plaintiffs were instructed to read all clauses, and, even if plaintiffs decided to forego an entire reading of the contract, they would have been drawn to Sections 11 and 12 not only by the warning on the cover page, but by the fact that those provisions are the only ones in all-caps. *See id.* at 17–18.

█ Third, upon settling on Section 11, plaintiffs were confronted with the forum selection clause. Although a non-lawyer may not have identified the same as a forum selection clause, it is sufficiently understandable from the plain language used therein that the provision was limiting the location of any lawsuit filed against Royal Caribbean to Miami, Florida. No other interpretation can be reached from the language of the provision. Plaintiffs contention to the contrary—that the forum selection clause is "vague"—is thus mis-

placed. *See* ECF No. 9 at 3.[2] Plaintiffs also assert that the contract language was not in Spanish. *Id.* at 3–4. However, this is a red herring, as plaintiffs fail to allege that they could not understand the contract because it was written in English. Next, plaintiffs contend that the size of the font is smaller than allowed for waivers under Puerto Rico law. *Id.* at 4.[3] This argument is also misplaced, however, as federal law governs the enforceability of a forum selection clause under admiralty law. *Shute,* 499 U.S. at 590, 111 S.Ct. 1522. Moreover, the reasonable communication test does not focus on compliance or lack thereof with state law, rather, it focuses on the "overall circumstances" of the specific case. *See Shankles,* 722 F.2d at 866.

Therefore, given that the forum selection clause was reasonably brought to plaintiffs' attention and was written in reasonably plain language, the first part of the reasonable communication test has been met. *See Lousararian,* 951 F.2d at 10–11 (noting that the contract language was not misleading, and the standard of communication "is one of reasonableness, not perfection.").

### 2. The Surrounding Circumstances

█ As discussed *supra,* this factor asks whether the passenger had the opportunity to be "meaningfully informed of the contractual terms at stake." *Shankles,* 722 F.2d at 866. Here, review of the booklet reflects that plaintiffs were meaningfully informed of the forum selection clause. First, as noted already, on the cover page of the booklet, plaintiffs were

---

2. In this regard, plaintiffs assert that the words "all other cases" should be interpreted in their favor. ECF No. 9 at 3. However, notwithstanding that plaintiffs do not explain how those words are vague, they do not appear in the forum selection clause in any event. *See* ECF No. 8–1 at 17.

3. In support of this contention, plaintiffs cite to "0 L.P.R.A. sections 731–793." ECF No. 9 at 4. However, there is no such provision in the Commonwealth of Puerto Rico's Civil Code, and it is not the role of the Court to find the provision, if it exists, for plaintiffs.

specifically instructed to read the contract, particularly Sections 11 and 12, which included the forum selection clause. **ECF No. 8–1** at 6. Second, even if plaintiffs glazed over this warning, the contract was located within the booklet in a place that should have reasonably led to its review. Notably, the contract is placed after a page containing "Frequently Asked Questions," and before pages containing requests for information that had to be filled out prior to joining the cruise and the passengers' luggage tags. *See* **ECF No. 8–1** at 16–21. At the very least, a passenger will seek out the tags needed to board a cruise with their luggage and review what information must be provided to the carrier for the payment of onboard services. *See Shankles,* 722 F.2d at 865 (noting that the district court found that the contract preceded the ticket coupon).

Third, although plaintiffs assert that they did not receive the booklet until after purchasing their tickets (**ECF No. 9** at 3), this does not mean that they were not meaningfully informed of the contents of the booklet, as they received the booklet prior to embarking on their cruise. *See Shankles,* 722 F.2d at 866 (concluding that the surrounding circumstances supported applying the contract's terms, in part, because the passenger had possession of her ticket prior to embarking on the cruise). As a result, if plaintiffs had read the contract contained in the booklet, they would have received notice of the forum selection clause, and, if they believed that such a clause eliminated the benefits of the cruise, they "presumably retained the option of

rejecting the contract with impunity." *See Shute,* 499 U.S. at 595, 111 S.Ct. 1522.[4] Moreover, as the First Circuit has explained, a passenger's familiarity with a ticket contract does not require *actual* knowledge of its terms, rather, the focus is on the opportunity to obtain such knowledge. *Lousararian,* 951 F.2d at 11. Having received the booklet prior to their voyage, having been warned of the importance of reading the contract and particularly Sections 11 and 12 of the same, and having received a legible, understandable, and clear contract, the Court finds that plaintiffs decision to proceed with their voyage despite the presence of the forum selection clause in the contract was reached after an opportunity to be meaningfully informed of said clause.

As a result, under the specific circumstances of this case, the forum selection clause satisfies the reasonable communication test, and thus, is valid in this Circuit. *See Shankles,* 722 F.2d at 864–67.

### 3. Fundamental Fairness

 This then leaves whether application of the clause is fundamentally fair under *Shute.* Here, as in *Shute,* there is no evidence to suggest otherwise. First, there is no indication that Royal Caribbean set Florida as the jurisdiction of choice as a means of discouraging plaintiffs from pursuing any action that they may have. *See Shute,* 499 U.S. at 595, 111 S.Ct. 1522. Rather, Royal Caribbean's principal offices are located in Miami, Florida. *See* **ECF No. 8–1** at 2. Second, there is no evidence that Royal Caribbean used fraud or overreaching to obtain plaintiffs' assent to the

---

4. The Court can state no more than "presumably," as the ticket contract is not a model of clarity as to how or when a passenger may seek a refund or otherwise reject the contract. In Section 8, it merely states that "Refunds for Passenger cancellations prior to sailing ... are limited by the terms of Carrier's refund policy. Passengers are advised to con-

sult the Carrier's cruise brochure for the terms of Carrier's refund policy." Royal Caribbean has not provided a copy of its refund policy, so the Court cannot assess whether plaintiffs could have sought a refund if they had rejected the forum selection clause. However, as in *Shute,* "presumably" plaintiffs could have.

forum selection clause. *See Shute*, 499 U.S. at 595, 111 S.Ct. 1522. Although plaintiffs use the label "overreaching" in their opposition to the motion to transfer, *see* **ECF No. 9** at 4, as explained *supra*, the fact that plaintiffs did not receive the booklet until after they purchased their tickets, does not mean that plaintiffs did not have an opportunity to be meaningfully informed of the forum selection clause, let alone that Royal Caribbean overreached in this regard, *see Shankles*, 722 F.2d at 866. Third, as discussed above with respect to the reasonable communication test, plaintiffs received reasonable notice of the forum selection clause. *See Shute*, 499 U.S. at 595, 111 S.Ct. 1522. Therefore, the forum selection clause is valid under Supreme Court and First Circuit case law.

### B. Section 1404(a) Analysis

■ As explained *supra*, in the context of a forum selection clause, the Court's § 1404(a) analysis is heavily circumscribed. First, the Court may not take into account plaintiffs' forum choice. *Atl. Marine*, 134 S.Ct. at 581. Thus, the fact that this case was brought in Puerto Rico has no bearing on whether to transfer it to Florida. *See id.* Second, the Court may place no con-

sideration on the parties' private interests. *Id.* at 582. Here, plaintiffs allege that transfer of this case will represent "an undue and unfair burden" on them because there are two minor plaintiffs, they do not have the money to hire an attorney in or purchase airfare to Miami, and they reside in Puerto Rico. **ECF No. 9** at 1–2. Although the Court may sympathize with plaintiffs' situation, even if their allegations of hardship are accurate, the Supreme Court did not create an exception for cases involving forum selection clauses contained in form passage contracts,[5] and thus, the Court is unable to consider plaintiffs' private interests in assessing whether transfer is proper in this case. *See Atl. Marine*, 134 S.Ct. at 582. As a result, the Court may only consider public factors in determining whether transfer is proper. Plaintiff, however, does not identify any public factors that would suggest transfer is improper, let alone overcome the Supreme Court's holding that forum selection clauses should control "except in unusual cases." *Id.*

In this light, the forum selection clause controls, and thus, under § 1404(a), in the interests of justice, this case should be

---

5. The Court notes that the decision in *Atl. Marine* was made in the context of a bargained-for forum selection clause, and this fact was emphasized in the Supreme Court's opinion. *See Atl. Marine*, 134 S.Ct. at 583 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place."). The fact that the parties here did not negotiate the ticket contract in any way, thus, makes this case different to the one in *Atl. Marine*. Nonetheless, the Supreme Court's holding is clear as to the control of forum selection clauses, and

it is not this Court's place to graft an exception to that holding where no such exception is indicated or suggested in the Supreme Court's opinion. Moreover, the Supreme Court held that forum selection clauses should control in all but "unusual cases." *Id.* at 582. There is no indication, and plaintiffs do not argue, that forum selection clauses in a form passage contract constitute such an unusual case. Rather, as the Supreme Court stated in *Shute*, such clauses are "routine" in commercial passage contracts. *Shute*, 499 U.S. at 593, 111 S.Ct. 1522. Given the number of commercial passage contracts that are presumably formed, for this Court to find that any forum selection clause therein represents an "unusual" case that does not warrant the clause's application would create an exception that effectively swallows the rule.

transferred in accordance with the same. Accordingly, the motion to transfer (**ECF No. 8**) is **GRANTED.**

### V. Conclusion

For the reasons discussed herein, Royal Caribbean's motion to transfer (**ECF No. 8**) is **GRANTED.** As a result, the Clerk is **ORDERED** to transfer this case to the U.S. District Court for the Southern District of Florida. The Clerk is further **ORDERED,** after transfer, to close this case.

**SO ORDERED.**